**07 CV 5847**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x
LAWRENCE OBSTFELD, individually
and derivatively on behalf of
TOEV MEDICAL CORPORATION, and
IGNITION VENTURES, INC.,

        Plaintiffs,

-against-

ARTHUR SCHWARTZ, RONALD SOLAR,
RENAISSANCE BIOMEDICAL, INC.,
GLEN LIEBER, and THERMOPEUTIX,
INC.,

        Defendants.
----------------------------------x

JUDGE BATTS

Civil Action No.

JUN 2 0 2007

**COMPLAINT**

Trial by Jury Demanded

(DAB) ECF CASE

    Plaintiffs Lawrence Obstfeld, individually and derivatively on behalf of Toev Medical Corporation, and Ignition Ventures, Inc. as and for their complaint allege as follows:

### SUMMARY OF ACTION

    1.   This is an action for breach of contract, violation of corporate law, breach of fiduciary duty, usurpation of corporate opportunities, conversion, tortious interference with contract, tortious interference with business relations, and misappropriation of trade secrets and proprietary information.

**JURISDICTION AND VENUE**

2.  This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between the parties to this action and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.  This Court has jurisdiction over this action, which involves a dispute concerning a patent, under 28 U.S.C. § 1338(a).

4.  Venue is proper in this district under 28 U.S.C. §§ 1391(a)(2), 1391(a)(3), 1391(b)(2), 1391(b)(3), and pursuant to an agreement.

**PARTIES**

5.  Toev Medical Corporation ("Toev") is a Delaware corporation.

6.  Lawrence Obstfeld ("Obstfeld") is a shareholder of Toev. He resides in Brooklyn, New York.

7.  Ignition Ventures, Inc. ("Ignition") is a Massachusetts corporation.

8.  ThermopeutiX, Inc. ("ThermopeutiX") is a Delaware corporation.

9.  Arthur Schwartz ("Schwartz") was president and chief executive officer of Toev. Upon information and belief, Schwartz resides in New Jersey and is a director, officer, and/or shareholder of ThermopeutiX.

10. Ronald Solar ("Solar") is a medical device engineer who was chief executive officer of Toev. Upon information and belief, Solar resides in California and is an officer, director, and/or shareholder of ThermopeutiX.

11. Upon information and belief, Renaissance Biomedical, Inc. ("Renaissance") is a California corporation that was retained as a consultant to Toev. Upon information and belief, Solar is the sole shareholder of Renaissance.

12. Upon information and belief, defendant Glen Lieber resides in California and is a former officer of Toev. Upon information and belief, he is and a shareholder, officer, director, and/or agent of ThermopeutiX.

**FACTS COMMON TO ALL CAUSES OF ACTION**

13. Schwartz, an anesthesiologist and former professor at Columbia University, through years of research and study developed a seminal understanding of the challenge and obstacles to selectively cooling the brain, a putative treatment for the 600,000 people per year who suffer strokes, as well as a novel method of cooling the brain so as to mitigate the negative effects of stroke ("Brain Cooling Method"). Success of this method was reported by Schwartz in the article "Isolated Cerebral Hypothermia by Single Cartoid Artery Perfusion of Extracorporeally Cooled Blood in Baboons" published in the journal *Neurosurgery*, 39(3):577 – 582, September 1996.

14. In 2000, Toev was formed by Schwartz and Obstfeld for the purpose of developing and commercializing Schwartz's Brain Cooling Method and related medical technologies.

15. The original shareholders of Toev were Schwartz, Obstfeld, Dr. Joseph Gottesman ("Gottesman"), and Stanley Gewirtz ("Gewirtz").

16. The Brain Cooling Method and the related medical technologies that were being developed by Schwartz are the property of Toev.

17. Due to Schwartz's work on the Brain Cooling Method while a professor at Columbia University ("Columbia"), Columbia owned rights to certain method patents covering a limited component of the Brain Cooling Method ("Columbia Patents").

18. Though leaving Columbia for Mount Sinai Hospital, Schwartz believed that Toev needed to obtain a license from Columbia for the Columbia Patents in order for him to further develop the Brain Cooling Method for Toev.

19. On February 4, 2000, Obstfeld loaned Toev $50,000 for the purpose of purchasing a license to the Columbia Patents ("Obstfeld Loan").

20. A promissory note concerning the Obstfeld Loan set forth a five year term of repayment and provided that Toev would pay attorneys' fees and expenses of collection.

21. On February 4, 2000, Columbia and Toev entered into a licensing agreement and a stock purchase agreement ("Stock Purchase Agreement"), whereby Toev obtained a license to use the Columbia Patents in exchange for $50,000 and 1,000 shares of Toev stock.

22. Additionally, as part of the Stock Purchase Agreement, it was agreed that: a) Toev intended to employ Schwartz; b) upon receipt of funding, Toev would compensate Obstfeld and Gewirtz $50,000 per annum for consulting services; c) Toev would engage Obstfeld as an employee; d) Toev would pay Obstfeld a fee of 1% of financing for the services he rendered to Toev as a registered representative; and e) Gewirtz and Obstfeld would provide Schwartz with proxies to vote their shares in Toev.

23. Toev, Schwartz, Obstfeld, Gottesman, and Gewirtz signed the Stock Purchase Agreement, which provides that the agreement shall be governed by New York law and venued in the United States District Court for the Southern District of New York or courts of the State of New York located in the City and County of New York.

24. Soon after Toev received the $50,000 from Obstfeld to purchase the license to the Columbia Patents, Schwartz froze Obstfeld out of Toev and refused to allow Obstfeld access to any Toev corporate information.

25. In September 2000, Schwartz, who was then chief executive officer of Toev, announced that Solar, a catheter engineer, had agreed to serve as director of research and development of Toev.

26. In December 2002, Toev entered into a contract with Ignition to provide start-up consulting to Toev and obtain funding for Toev in exchange for a retainer and 7% of the outstanding shares of Toev.

27. Ignition performed all the work required under its contract with Toev, but was never paid its full retainer and did not receive shares of Toev in accordance with its agreement with Toev.

28. In May 2003, Schwartz appointed Solar to the position of chief executive officer of Toev.

29. In May 2003, Glen Lieber ("Lieber") was appointed president of Toev and vice-president of research and development of Toev.

30. On or about August 18, 2003, Schwartz, the holder of the more than 70% of the shares of Toev, unilaterally established himself as the sole director of Toev.

31. In September 2003, Toev entered into a consulting agreement with Renaissance Biomedical, Inc. ("Renaissance"), a company of which Solar was the sole shareholder.

32.  Under the consulting agreement with Renaissance, Renaissance agreed to assist Toev in the development and commercialization of the Brain Cooling Method and other related medical technologies and Toev agreed to pay Renaissance $25,000 per month for a minimum of three months.

33.  In December 2003, Toev's corporate charter in Delaware lapsed due to Toev's failure to pay the applicable franchise taxes.

34.  In February 2004, Ignition advised Schwartz that several venture capital firms were interested in making investments in Toev.

35.  In May 2004, Solar refused to allow Toev to negotiate to accept funding sourced by Ignition.

36.  On May 27, 2004, a corporate filing was made for ThermopeutiX, with Lieber being listed as its agent for the service of process.

37.  Upon information and belief, Schwartz, Solar, Lieber, and Renaissance were the founders of ThermopeutiX and are officers, directors, and/or shareholders of ThermopeutiX.

38.  Schwartz, Solar, Lieber, and Renaissance never made any disclosure to Toev concerning their involvement with the formation of ThermopeutiX.

39.  Upon information and belief, Schwartz, Solar, Lieber, and Renaissance misappropriated the Brain Cooling Method

and other related proprietary medical technologies from Toev for their own benefit and formed ThermopeutiX as a vehicle to profit from their misappropriation.

40. Upon information and belief, Schwartz, Solar, Lieber, and Renaissance had begun to make arrangements for the formation of ThermopeutiX during the time that they owed duties of undivided loyalty to Toev and its shareholders.

41. Solar sent an e-mail, dated May 7, 2004, indicating that he had chosen not to renew his contract with Toev.

42. In a June 20, 2004 e-mail to Columbia, Schwartz, who was then president and the sole member of the board of directors of Toev, announced that, effective immediately, he was relinquishing ownership of all of his shares of stock in Toev, assigning those shares to Toev, and resigning from his position as an officer and director of Toev.

43. As the result of Schwartz's purported resignation and abandonment of Toev, Toev was left without a board of directors.

44. Upon information and belief, although Schwartz was the sole director of Toev and owned more than 70% of its stock, he made no effort to fill the vacancy left by his purported resignation as the sole director of Toev.

45. Upon information and belief, Schwartz's announcement of his purported resignation was directed to Columbia only, not to the other shareholders of Toev: Obstfeld, Gewirtz, and Gottesman.

46. In a May 24, 2005 press release, Surmodics, Inc. ("Surmodics"), a leading provider of medical technologies to the healthcare industry, announced that it was investing $1 million in ThermopeutiX based upon the Brain Cooling Method and related medical technologies.

47. Upon information and belief, ThermopeutiX also obtained significant additional funding based upon the Brain Cooling Method and related medical technologies.

48. Schwartz, Solar, Lieber, and Renaissance never offered to Toev the opportunity to partake in the Surmodics funding or any other funding concerning the Brain Cooling Method or any other related medical technologies that were being developed by Schwartz for Toev.

49. Plaintiffs only learned of Schwartz and Solar's involvement in ThermopeutiX by reading the Surmodics press release.

50. Upon information and belief, ThermopeutiX has submitted an application for a patent for aspects of the Brain Cooling Method and other proprietary medical technologies that

had been misappropriated from Toev by Schwartz, Solar, Lieber, and Renaissance.

51.  Schwartz was the sole member of the board of directors of Toev.  Accordingly, the requirement that a demand be made to the Toev board of directors to commence an action to assert the claims that Obstfeld has asserted on behalf of Toev in this action should be excused on the basis of futility.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Breach of Fiduciary Duty)**

52.  All allegations contained in the paragraphs above are incorporated by reference.

53.  Defendants Schwartz, Solar, Lieber, and Renaissance owed fiduciary duties to Toev.

54.  Defendants Schwartz, Solar, Lieber, and Renaissance breached the fiduciary duties they owed to Toev by, among other things, usurping corporate opportunities in which Toev had an interest, forming ThermopeutiX for the purpose of benefiting from their misappropriation of the Brain Cooling Method and related medical technology that were the trade secrets and proprietary information of Toev, and using their positions as officers, directors, employees, shareholders, and/or consultants of Toev to engage in self-interested transactions and actions detrimental to the interests of Toev and its shareholders.

55. As a consequence of Schwartz, Solar, Lieber, and Renaissance's breaches of fiduciary duty, Toev has been damaged in an amount to be determined at trial, but believed to be not less than $20 million.

56. Additionally, due to Schwartz, Solar, Lieber, and Renaissance's breaches of fiduciary duty, all shares of stock and assets of ThermopeutiX should be deemed the property of Toev and placed in a constructive trust for the benefit of Toev, including any patents or the rights to any pending patents.

57. All profits obtained by Schwartz, Solar, Lieber, and Renaissance as the result of their breaches of fiduciary duty and all compensation paid to them during the time that they were disloyal to Toev should be disgorged to Toev.

58. Plaintiffs also request the imposition of punitive damages against Schwartz, Solar, Lieber, and Renaissance for their egregious conduct, including their reckless breaches of the fiduciary duties that they owed to Toev and its shareholders and their wholesale misappropriation of Toev's proprietary information for their own benefit.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty)

59. All allegations contained in the paragraphs above are incorporated by reference.

60. As the result of Schwartz, Solar, Lieber, and Renaissance's breaches of fiduciary duty, Toev has been unable to meet its obligations under the Obstfeld Loan.

61. Consequently, Obstfeld has been damaged in an amount not less than $450,000 plus attorneys' fees, costs, and disbursements.

62. Plaintiffs also request the imposition of punitive damages against Schwartz, Solar, Lieber, and Renaissance for their egregious conduct, including their reckless breaches of the fiduciary duties that they owed to Toev and its shareholders and their wholesale misappropriation of Toev's proprietary information for their own benefit.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Tortious Interference with Contract)

63. All allegations in the paragraphs above are incorporated by reference.

64. Schwartz, Solar, Lieber, and Renaissance were directors, officers, and consultants of Toev.

65. Schwartz, Solar, Lieber, and Renaissance, motivated by their plan to profit from the misappropriation of the Brain Cooling Method and related proprietary information belonging to Toev, intentionally and unjustifiably induced Toev to breach its agreement with Ignition.

66. As a consequence of Schwartz, Solar, Lieber, and Renaissance's tortious interference with the contract between Ignition and Toev, Ignition has been damaged in an amount to be determined at trial, but believed to be not less than $350,000, and is entitled to 7% of Toev stock.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Tortious Interference with Business Relations)**

67. All allegations in the paragraphs above are incorporated by reference.

68. Ignition was hired by Toev to perform start-up consulting and to obtain funding for Toev.

69. Ignition prepared presentations and contacted several venture capital firms for the purpose of obtaining funding for Toev.

70. Ignition kept Schwartz and Solar apprised of its progress in securing funding for Toev.

71. Ignition was successful in using its contacts and resources to find prospective investors for Toev and informed Schwartz that it had found several prospective investors interested in funding Toev.

72. In May 2004, despite the fact that Ignition had found prospective investors willing to invest in Toev, Solar abruptly and without explanation refused to allow Toev to

13

consider offers of investment in Toev from prospective investors sourced by Ignition.

73. Toev was not allowed to continue negotiations with prospective investors sourced by Ignition because Schwartz, Solar, Lieber, and Renaissance had --in breach of their fiduciary duties to Toev -- formed or were in the process of forming ThermopeutiX, a company they intended to use as a vehicle to profit from their misappropriation of the Brain Cooling Method and other proprietary information belonging to Toev.

74. Ignition's relations with the prospective investors that it had sourced for Toev and other investors has been harmed as the result of Solar's refusal to allow Toev to consider the offers of investment sourced by Ignition.

75. Consequently, Ignition has been damaged in an amount to be determined at trial, but believed to be not less than $500,000.

### AS AND FOR A FIFTH CAUSE OF ACTION
#### (Conversion)

76. All allegations contained in the paragraphs above are incorporated by reference.

77. Defendants have wrongfully exercised dominion and control over the Brain Cooling Method and other proprietary information belonging to Toev.

78. As the result of defendants' conversion, Toev has been damaged in an amount to be determined at trial, but believed to be not less than $20 million.

79. Plaintiffs also request the imposition of punitive damages against Schwartz, Solar, Lieber, and Renaissance for their egregious conduct, including their reckless breaches of the fiduciary duties that they owed to Toev and its shareholders and their wholesale misappropriation of Toev's proprietary information for their own benefit.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (Breach of Contract/Violation of Corporate Law)

80. All allegations in the paragraphs above are incorporated by reference.

81. Schwartz engaged in actions, including, but not limited to, various acts of self-dealing and oppression of minority shareholders, that violated the Toev shareholder agreement, Toev's by-laws, the Stock Purchase Agreement, and corporate law, for the purpose of misappropriating the Brain Cooling Method and other proprietary information belonging to Toev for his own benefit.

82. As the result of Schwartz's breaches of the Toev shareholder agreement, Toev's by-laws, the Stock Purchase Agreement and violation of applicable corporate law, plaintiffs

have been damaged in an amount to be determined at trial, but believed to be not less than $20 million.

83. Plaintiffs also request the imposition of punitive damages against Schwartz, Solar, Lieber, and Renaissance for their egregious conduct, including their reckless breaches of the fiduciary duties that they owed to Toev and its shareholders and their wholesale misappropriation of Toev's proprietary information for their own benefit.

### AS AND FOR A SEVENTH CAUSE OF ACTION
#### (Misappropriation of Trade Secrets)

84. All allegations in the paragraphs above are incorporated by reference.

85. Schwartz, Solar, Lieber, and Renaissance misappropriated trade secrets and other proprietary information belonging to Toev and founded ThermopeutiX for the purpose of profiting from their misappropriation of Toev's confidential information.

86. As the result of Schwartz and Solar's misappropriation of Toev's trade secrets and proprietary information, Toev has been damaged in an amount to be determined at trial, but believed to be not less than $20 million.

87. Plaintiffs also request the imposition of punitive damages against Schwartz, Solar, Lieber, and Renaissance for their egregious conduct, including their

reckless breaches of the fiduciary duties that they owed to Toev and its shareholders and their wholesale misappropriation of Toev's proprietary information for their own benefit.

### JURY DEMAND

88. Plaintiffs demand trial by jury.

WHEREFORE, plaintiffs respectfully request that a judgment be entered against defendants as follows:

- a. on the first cause of action, in an amount to be determined at trial, but believed to be not less than $20 million, imposing a constructive trust in favor of Toev, declaring Toev the owner of all stock in ThermopeutiX and all of its assets, directing defendants to disgorge any profits obtained as the result of their breaches of fiduciary duty and any compensation received during their periods of disloyalty, and punitive damages;
- b. on the second cause of action, in an amount not less than $450,000 plus attorneys' fees, costs, disbursements, and punitive damages;
- c. on the third cause of action, in an amount not less than $350,000 and directing the issuance of 7% of the outstanding stock in Toev to Ignition;
- d. on the fourth cause of action, in an amount to be determined at trial, but believed to be not less than $500,000;
- e. on the fifth cause of action, in an amount to be determined at trial, but believed to be not less than $20 million and punitive damages;
- f. on the sixth cause of action, in an amount to be determined at trial, but believed to be not less than $20 million and punitive damages;
- g. on the seventh cause of action, in an amount to be determined at trial, but believed to be not less than $20 million and punitive damages;
- h. granting plaintiffs, costs, disbursements, and attorneys' fees; and

      i.    for such other relief as the Court may deem just and proper.

Dated:    Freeport, New York
June 20, 2007

**LAW OFFICE OF MARC M. ISAAC PLLC**

By: /s/ Marc M. Isaac (MI-1873)
      MARC M. ISAAC
210 Moore Avenue
Freeport, New York 11520
(516) 750-1422

*Attorneys for Plaintiffs*