UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

                                                    )
LAWRENCE OBSTFELD,                                  )
individually and derivatively                       )
on behalf of TOEV MEDICAL                           )         Civ. No. 07-5847 (DAB)
CORPORATION, and                                    )
IGNITION VENTURES, INC.,                            )         ECF Case
                                                    )
Plaintiffs,                                         )
                                                    )
v.                                                  )
                                                    )
ARTHUR SCHWARTZ,                                    )
RONALD SOLAR,                                       )
RENAISSANCE BIOMEDICAL, INC.,                       )
GLEN LIEBER, and                                    )
THERMOPEUTIX, INC.,                                 )
                                                    )
Defendants.                                         )
_____)


_____

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS RONALD SOLAR, RENAISSANCE BIOMEDICAL, INC., GLEN LIEBER, AND THERMOPEUTIX, INC.'S MOTION TO DISMISS
_____

94875.1

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 1

    1.    The Parties ........................................................................................... 1
    2.    Overview of Plaintiffs' Claims ............................................................ 2
    3.    Alleged Bases for Subject Matter Jurisdiction ................................... 5
    4.    Alleged Basis for Asserting a Shareholder's Derivative Claim ........... 6
    5.    Facts Relating to Personal Jurisdiction over Glen Lieber .................... 7

ARGUMENT ....................................................................................................... 8

    I.    THE COURT LACKS SUBJECT MATTER JURISDICTION ........................... 8

        A.    The Parties Are Not Completely Diverse .................................. 8
        B.    There Are No Claims Arising Under the Patent Laws ............... 10

    II.    THE AMENDED COMPLAINT VIOLATES RULE 23.1 ................................ 13

    III.    THE COURT LACKS PERSONAL JURISDICTION OVER GLEN
        LIEBER ......................................................................................... 15

        A.    New York's Long-Arm Statute Does Not Reach Glen Lieber ................. 15
        B.    Exercise of Jurisdiction Over Glen Lieber Would Violate Due
            Process ....................................................................................... 16

    IV.    COUNTS TWO AND FIVE DO NOT STATE ACTIONABLE
        CLAIMS ......................................................................................... 18

        A.    Count Two Does Not State A Claim ............................................. 18
        B.    Count Five Does Not State A Claim ............................................. 19

    V.    COUNTS TWO, FOUR, FIVE, AND SEVEN ARE TIME-BARRED ............. 20

        A.    Count Two Is Barred By New York's Statute of Limitations ................. 20
        B.    Count Four Is Barred by New York's State of Limitations ..................... 21
        C.    Counts Five and Seven Are Barred By New York's Statute of
            Limitations ................................................................................. 21

CONCLUSION ..................................................................................................... 23

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

*AT & T Co. v. Integrated Network Corp.*, 972 F.2d 1321 (Fed. Cir. 1992)...................................12

*Bank  Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
    305 F.3d 120 (2d Cir. 2002)..................................................................................16, 17

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
    2001 WL 893362 (S.D.N.Y. 2001)..................................................................................17

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004) ......................................11

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988)...............................................11

*D'Addario v. Geller*, 264 F. Supp. 2d 367 (E.D. Va. 2003) ..........................................................14

*Diduck v. Kaszycki & Sons Contractors, Inc.*, 737 F. Supp. 792 (S.D.N.Y. 1990)......................14

*Doctor's Assoc., Inc. v. Distajo*, 66 F.3d 438 (2d Cir. 1995) ...........................................................8

*Duffey v. D.C. Wheeler*, 820 F.2d 1161 (11th Cir. 1987) .................................................................9

*Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99 (1945) ................................................................19

*Hawes v. Oakland*, 104 U.S. 450 (1882) ........................................................................................14

*Helicopteros Nacionales De Columbia, S.A. v. Hall*, 466 U.S. 408 (1984) ..................................16

*IT Litigation Trust v. D'Aniello*, 2005 WL 3050611 (D. Del. 2005)..............................................18

*Iacobelli Constr., Inc. v. County of Monroe*, 32 F.3d 19 (2d Cir. 1994) .......................................19

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).......................................................................16

*Kartub v. Optical Fashions*, 158 F. Supp. 757 (S.D.N.Y. 1958)....................................................10

*Lewis v. Odell*, 503 F.2d 445 (2d Cir. 1974)....................................................................................9

*Liddy v. Urbanek*, 707 F.2d 1222 (11th Cir. 1983)........................................................................10

*Markowitz v. Brody*, 90 F.R.D. 542 (S.D.N.Y. 1981).....................................................................13

ii

*McCall v. Pataki*, 232 F.3d 321 (2d Cir. 2000) .................................................................18

*Metro. Life Ins. Co. v. Robertson-Ceco, Corp.*, 85 F.3d 560 (2d Cir. 1996) .................17

*In re NSSE Specialists Sec. Litig.*, 405 F. Supp. 281 (S.D.N.Y. 2005)...........................18

*Netwolves Corp. v. Sullivan*, 2001 WL 492463 (S.D.N.Y. 2001) .............................9, 10

*Phansalkar v. Andersen Weinroth & Co., L.P.*, 175 F. Supp. 2d 635 (S.D.N.Y. 2001)...............19

*Rosemeier v. Schenker Int'l, Inc.*, 895 F. Supp. 65 (S.D.N.Y. 1995) ...........................21

*Smachlo v. Birkelo*, 576 F. Supp. 1439 (D. Del. 1983) ..................................................14

*Smith v. Sperling*, 354 U.S. 91 (1957) ..............................................................................9

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100 (2d Cir. 2006).................15

*Speigel v. Quality Brokers of Am. Coop., Inc.*,
     1992 WL 349799 (S.D.N.Y. Nov. 10, 1992).............................................................19

*Taylor v. Swirnow*, 80 F.R.D. 79 (D. Md. 1978) .........................................................10

*Thomas v. Ashcroft*, 470 F.3d 491 (2d Cir. 2006).......................................................15

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135 (2d Cir. 2001) ...............17

*Uroplasty, Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277 (Fed. Cir. 2001)....................11, 12

*In re Vecco Instruments, Inc.*, 434 F. Supp. 2d 267 (S.D.N.Y. 2006) ..........................13

*ZB Holdings, Inc. v. White*, 144 F.R.D. 42 (S.D.N.Y. 1992).........................................9

## STATE CASES

*Andrew Greenberg, Inc. v. Svane, Inc.*, 36 A.D.3d 1094, 1098 (3d Dept. 2007) .........................21

*H&P Rsch., Inc. v. Integra Realty, Inc.*, 685 N.Y.S.2d 43 (1st Dept. 1999) ...............21

*Ippolito v. Lennon*, 542 N.Y.S.2d, 3 (1st Dept. 1989) .................................................19

*Pourroy v. Gardner*, 10 P.2d 815 (Cal. App. 1932) ....................................................15

*Weisenthal v. Weisenthal*, 40 A.D.3d 1078, 583 (2d Dept. 2007) ..................................20

iii

## STATUTES AND RULES

Fed. R. Civ. P. 4(k)(1)(A) ...................................................................................15

Fed. R. Civ. P. 12(b)(1) ...........................................................................1, 12, 22

Fed. R. Civ. P. 12(b)(2) ....................................................................1, 15, 17, 22

Fed. R. Civ. P. 12(b)(6) ....................................................................1, 18, 22

Fed. R. Civ. P. 23.1 ..........................................................1, 6, 12, 13, 14, 15, 22

28 U.S.C. § 1332(a) .................................................................................8

28 U.S.C. § 1332(a)(1) .........................................................................5, 10

28 U.S.C. § 1332(c)(1) .................................................................................8

28 U.S.C. 1338 .........................................................................................5

28 U.S.C. § 1338(a) .........................................................................5, 8, 10, 11

N.Y. C.P.L.R. § 302(a) .......................................................................15, 20

N.Y. C.P.L.R. § 214(4) .......................................................................20, 21

N.Y. C.P.L.R. § 214(3) .............................................................................21

94875.1

## PRELIMINARY STATEMENT

Plaintiffs' Amended Complaint suffers from several infirmities, each of which warrants dismissal of the case. Defendants ThermopeutiX, Inc. ("ThermopeutiX"), Renaissance Biomedical, Inc. ("Renaissance"), Ronald Solar, and Glen Lieber (collectively, "Defendants") move for dismissal under Fed R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(6), and 23.1 for the following reasons: (1) this Court lacks subject matter jurisdiction because there is not complete diversity nor is there a federal question; (2) plaintiff Lawrence Obstfeld failed to meet the prerequisites for pleading a derivative action; (3) Glen Lieber, a California resident, is not subject to personal jurisdiction in New York; (4) counts two and five fail to state actionable claims against any Defendants; and (5) counts two, three, and five are barred by the statute of limitations.

## STATEMENT OF FACTS

Plaintiffs' substantive allegations are entirely devoid of merit. Nevertheless, because Defendants' motion arises under Rule 12, the following facts are drawn from the Amended Complaint – and assumed to be true – unless otherwise noted.[1]

1.  <u>The Parties</u>

Plaintiffs' suit arises out of the alleged failure of a start-up medical company called Toev Medical Corporation ("Toev"). According to the Amended Complaint ("Am. Compl."), plaintiff Toev was formed in 2000 for the purpose of commercializing a stroke treatment pioneered by defendant Arthur Schwartz, an anesthesiologist. Am. Compl. ¶ 15. The treatment relates to a method of selectively cooling the brain to alleviate stroke symptoms. *Id.* ¶ 14. Dr. Schwartz developed the brain cooling method while a professor at Columbia University, and Columbia owned certain patents in connection therewith. *Id.* ¶ 18. Toev purchased a license to the

---

[1] While the facts alleged in the Amended Complaint are taken as true for purposes of this motion, Defendants reserve the right to challenge their accuracy if this motion is denied.

Columbia patents. *Id.* ¶ 22. Ultimately, Toev's corporate charter lapsed and Dr. Schwartz – its only board member – resigned. *Id.* ¶¶ 34; 43-44.

Plaintiff Lawrence Obstfeld is a Toev shareholder and, allegedly, a Toev creditor. Am. Compl. ¶¶ 7; 20. Mr. Obstfeld purports to bring claims both individually and derivatively on Toev's behalf. *Id.* at 1. Plaintiff Ignition Ventures, Inc. claims to have provided start-up consulting and fundraising services to Toev. *Id.* ¶ 27. Plaintiffs claim that defendants Arthur Schwartz, Ron Solar, Renaissance, and Glen Lieber are former Toev managers and consultants. *Id.* ¶¶ 10, 11, 12, 13. Solar and Renaissance ended their relationship with Toev on May 7, 2004, and Dr. Schwartz resigned on June 20, 2004. *Id.* ¶¶ 37; 43-35. Following Toev's demise, the individual Defendants founded, and now manage, defendant ThermopeutiX. *Id.* ¶ 39. Defendants formed ThermopeutiX – allegedly for the purpose of benefiting from the alleged misappropriation of Toev's technology – on May 27, 2004, more than three years before Plaintiffs filed suit. *Id.* ¶ 38. Plaintiffs allege that the individual Defendants left Toev and formed ThermopeutiX as a vehicle with which to exploit technology or other intangible property that Plaintiffs claim belongs to Toev. *Id.* ¶ 41.

2.    <u>Overview of Plaintiffs' Claims</u>

Plaintiffs filed their Complaint on June 20, 2007, and filed their Amended Complaint on July 25, 2007. [Dkt. Nos. 1 and 6] Plaintiffs assert seven claims against some or all of the defendants.

The first claim is for breach of fiduciary duty, and is stated against defendants Schwartz, Solar, Lieber, and Renaissance. Am. Compl. ¶ 54. Plaintiffs claim that these defendants breached fiduciary duties by (1) usurping corporate opportunities in which Toev had an interest, (2) forming ThermopeutiX, and (3) using their positions as officers, directors, employees,

2

shareholders, and/or consultants of Toev to engage in self-interested transactions. *Id.* ¶ 55. Since Defendants allegedly formed ThermopeutiX on May 27, 2004, *id.* ¶ 38, Defendants had allegedly breached their duties to Toev before that date, by making arrangements for ThermopeutiX's formation during the time they purportedly owed duties to Toev and its shareholders. *Id.* ¶¶ 41-42.

Plaintiffs' second cause of action also is stated against defendants Schwartz, Solar, Lieber, and Renaissance. Am. Compl. ¶ 61. It relates to these Defendants' alleged breach of a fiduciary duty to Toev that allegedly prevented Toev from meeting its obligations to repay a loan from plaintiff Lawrence Obstfeld. Am. Compl. ¶¶ 61-63. Plaintiffs allege that on February 4, 2000, Obstfeld loaned Toev $50,000. *Id.* ¶ 20. Plaintiffs claim that Toev did not repay the loan. *Id.* ¶ 61. Plaintiffs allege that Toev's failure to meet its legal obligations to Obstfeld resulted from "Schwartz, Solar, Lieber, and Renaissance's breaches of fiduciary duty." *Id.* ¶ 61. As a result of Defendants' breaches of fiduciary duty to Toev that allegedly caused Toev to default on a $50,000 loan to Obstfeld, Obstfeld claims that he personally incurred damages "in an amount not less than $450,000 plus attorneys' fees, interest, costs, and disbursements." *Id.* ¶ 62.

Plaintiffs' third claim, stated against the same four Defendants, is for tortious interference with contract, based on Plaintiffs' allegation that Schwartz, Solar, Lieber, and Renaissance "intentionally and unjustifiably induced Toev to breach its agreement with Ignition." Am. Compl. ¶ 66.

Count four is a tortious interference with business relations claim, stated against the same four Defendants, based on the allegations that defendant Ronald Solar refused to allow Toev to consider offers of investment in Toev from prospective investors sourced by Ignition, and that all four Defendants breach their fiduciary duties to Toev by forming ThermopeutiX. Am. Compl.

3

¶¶ 73, 74.  According to the Amended Complaint, the interference occurred "[i]n May 2004," more than three years before Plaintiffs filed suit.  *Id*.

In the fifth count, for conversion, Plaintiffs claim that "Defendants[2] have wrongfully exercised dominion and control over the Brain Cooling Method and other proprietary information belonging to Toev."  Am. Compl. ¶ 78.  The Amended Complaint defines "Brain Cooling Method" as "a putative treatment for the approximately 600,000 people per year who suffer strokes, as well as a novel method of cooling the brain so as to mitigate the negative effects of stroke."  *Id*. ¶ 14.

Count six is a claim for breach of a Stock Purchase Agreement and "violation of applicable corporate law" against Defendants Schwartz, Solar, Lieber, and Renaissance.  Am. Compl. ¶¶ 82-83.  Plaintiffs do not specifically identify the breaching conduct, or the legal or contractual duties breached, referring only to "various acts of self-dealing and oppression of minority shareholders, that violated the Toev shareholder agreement, Toev's by-laws, and corporate law . . . ."  *Id*. ¶ 83.

Plaintiffs' seventh cause of action is for misappropriation of trade secrets against Defendants Schwartz, Solar, Lieber, and Renaissance, based on their alleged misappropriation of Toev's intangible property.  Am. Compl. ¶ 78.  As discussed above, Plaintiffs allege that the individual Defendants misappropriated Toev's technology and, in May 2004 (more than three years before suit was filed), "formed ThermopeutiX as a vehicle to profit from their misappropriation."  *Id*. ¶¶ 38; 86-87.

---

[2] The reference to "Defendants" apparently means each and every defendant, making this the only claim asserted against ThermopeutiX.

4

3.    <u>Alleged Bases for Subject Matter Jurisdiction – Diversity and Patent Claims</u>

Plaintiffs assert diversity jurisdiction under 28 U.S.C. § 1332(a)(1), claiming "there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs." Am. Compl. ¶ 2. Plaintiffs also allege that jurisdiction exists under 28 U.S.C. § 1338(a) because the action "involves a dispute concerning a patent." *Id*. ¶ 3. The facts alleged in the Amended Complaint belie both purported bases for subject matter jurisdiction.

In Plaintiffs' caption, Lawrence Obstfeld claims to be suing "individually and on behalf of Toev Medical Corporation." Toev is aligned as a plaintiff. Plaintiffs specifically allege that *plaintiff* Toev is a Delaware corporation, and that *defendant* ThermopeutiX is also a Delaware corporation. Am. Compl. ¶¶ 6; 9. The incomplete jurisdictional facts Plaintiffs have alleged suffice to destroy diversity – both Toev and ThermopeutiX are deemed citizens of Delaware.

Plaintiffs do not plead any facts to suggest antagonism exists between Plaintiffs and Toev Medical Corporation (or its current management) such that Toev should be realigned as a defendant for jurisdictional purposes. Plaintiffs allege that the three individual Defendants are *former* officers of Toev. Am. Compl. ¶¶ 10; 11; 13. Arthur Schwartz, the only defendant alleged to have been a Toev shareholder (and its sole director), resigned as director and officer and relinquished ownership of all his Toev stock, assigning his shares back to Toev in June 2004. *Id.* ¶ 43. Plaintiffs allege that Toev did not have a board of directors from June 2004 to the present. *Id.* ¶¶ 44; 45; 52. Plaintiffs do not allege any relationship between the individual defendants and Toev on or after June 2004. Nor do Plaintiffs allege that any Defendant had a relationship with Toev at the time Plaintiffs sought to commence this lawsuit.

Though they claim jurisdiction exists under 28 U.S.C. § 1338, Plaintiffs base none of their claims on federal patent law. Instead, the Amended Complaint contains only passing

94875.1

references to patents.  Plaintiffs allege that Toev licensed patents from Columbia University relating to a brain cooling method pioneered by Arthur Schwartz.  Am. Compl. ¶¶ 14; 18; 22. Plaintiffs allege, "[u]pon information and belief, Schwartz, Solar, Lieber, and Renaissance misappropriated the Brain Cooling Method and other related proprietary medical technologies from Toev . . . ."  *Id.* ¶ 41.  Plaintiffs further allege, "[u]pon information and belief, ThermopeutiX has submitted an application for a patent for aspects of the Brain Cooling Method and other proprietary medical technologies that have been misappropriated from Toev by Schwartz, Solar, Lieber, and Renaissance."  *Id.* ¶ 51.

Nowhere do Plaintiffs allege that they own any patents, or that they have the right to bring claims to enforce any patents.  Instead, Plaintiffs assert claims for misappropriation of trade secrets and for conversion of "the Brain Cooling Method and other proprietary information belonging to Toev" – claims firmly grounded in state law.  Am. Compl. ¶¶ 77-79; 85-87.

4.    Alleged Basis for Asserting a Shareholder's Derivative Claim

Plaintiff Lawrence Obstfeld purports to assert claims against the defendants "derivatively on behalf of Toev Medical Corporation."  In an apparent effort to comply with Fed. R. Civ. P. 23.1 and state law requirements for bringing a shareholder's derivative action, Plaintiffs allege as follows:

> Schwartz *was* the sole member of the board of directors of Toev.  Accordingly, the requirement that a demand be made to the Toev board of directors to commence an action to assert the claims that Obstfeld has asserted on behalf of Toev on this action should be excused on the basis of futility.

Am. Compl. ¶ 52 (emphasis added).  According to the Amended Complaint, Arthur Schwartz relinquished his shares at the same time he resigned from Toev's board of directors (leaving the board vacant), more than three years ago.  *Id.* ¶ 43.  The Amended Complaint does not allege any factual basis for the conclusory assertion that it would have been futile for Mr. Obstfeld to make

94875.1

a demand on Toev in the intervening three years between Dr. Schwartz's resignation and the filing of this action.

5.    Facts Relating to Personal Jurisdiction Over Glen Lieber

Plaintiffs make no allegation whatsoever connecting Glen Lieber to the state of New York. The only references to New York in the Amended Complaint are the following: (1) plaintiff Lawrence Obstfeld resides in New York (Am. Compl. ¶ 6); (2) defendant Arthur Schwartz is a *former* Columbia University professor (*id.* ¶ 17); (3) Toev licensed patents from Columbia University, a non-party (*id.* ¶ 21); and (4) Toev, Arthur Schwartz, Lawrence Obstfeld, Joseph Gottesman (non-party), and Stanley Gewirtz (non-party) signed a stock purchase agreement that was to be governed by New York law and disputes resolved in New York (*id.* ¶ 23).

Glen Lieber has been, at all relevant times, a resident of California. Am. Compl. ¶ 13; Declaration of Glen Lieber, ¶ 4. Glen Lieber has no bank accounts or other assets in New York. Lieber Decl. ¶ 4. During the time relevant to the Amended Complaint – May 2003 through May 2005[3] – Glen Lieber traveled to New York a total of three times. *Id.* ¶ 5. His only trip to New York connected with Toev business occurred in June 2003, when he met with Ronald Solar and representatives of Ignition Ventures, Inc. at the W Hotel. *Id.* All other work performed by Mr. Lieber in connection with Toev took place in the form of telephone conferences. *Id.* On those occasions, Ignition would provide Mr. Lieber a toll free number that he could dial to participate in the call. *Id.* Mr. Lieber would call the number from California, and he did not know the location of the other conference participants. *Id.*

---

[3] According to the Amended Complaint, Glen Lieber was appointed as an officer of Toev in May 2003. Am. Compl. ¶ 30. The latest date referenced in the Complaint is May 24, 2005. *Id.* ¶ 47.

7

Mr. Lieber's only other contacts with New York are unrelated to Toev.  Mr. Lieber traveled to New York in June 2004 to attend a cardiology conference in connection with his work for ThermopeutiX.  Lieber Decl. ¶ 6.  Mr. Lieber's only other visit to New York in the last five years was in June 2006, when he appeared for a deposition in a lawsuit between Guidant Sales Corporation and X Technologies, a company with which Mr. Lieber previously was affiliated.  *Id*.

## ARGUMENT

### I.    THE COURT LACKS SUBJECT MATTER JURISDICTION.

The allegations in Plaintiffs' Amended Complaint, taken as true, foreclose federal jurisdiction.  First, the parties are not completely diverse, because Delaware corporations are aligned on both sides of the action.  Second, jurisdiction cannot exist under 28 U.S.C. § 1338(a), because Plaintiffs have asserted no claims arising under U.S. patent law.

### A.    The Parties Are Not Completely Diverse.

Plaintiffs' invocation of diversity jurisdiction is unfounded, because plaintiffs' own allegations reveal that plaintiff Toev and defendant ThermopeutiX are both Delaware corporations.  Am. Compl. ¶¶ 6; 9.  The diversity statute, 28 U.S.C. § 1332(a), confers federal jurisdiction over civil actions between "citizens of different states."  For diversity purposes, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ."  28 U.S.C. § 1332(c)(1).  Section 1332(a) requires complete diversity, *i.e.*, that no plaintiff be a citizen of the same state as any defendant.  *See Doctor's Assoc., Inc. v. Distajo*, 66 F.3d 438, 445 (2d Cir. 1995).

Assuming the truth of Plaintiffs' allegations, complete diversity is lacking, because of Toev's and ThermopeutiX's shared state of incorporation.  The existence of Lawrence Obstfeld's

94875.1

purported derivative claims does not cure the problem. "[T]he general rule is that the corporation in a derivative suit should be aligned as a plaintiff since it is the real party in interest." *See ZB Holdings, Inc. v. White*, 144 F.R.D. 42, 45 (S.D.N.Y. 1992) (*citing Duffey v. D.C. Wheeler*, 820 F.2d 1161, 1163 (11th Cir. 1987)). The U.S. Supreme Court has recognized an exception to this general rule that applies when aligning the corporation as a plaintiff would not provide a "real collision" of interests. *Smith v. Sperling*, 354 U.S. 91, 97 (1957). Such realignment is only proper, however, when "[the] corporation is actively antagonistic to plaintiff's interests." *See ZB Holdings*, 144 F.R.D. at 45 (*citing Duffey* at 1163).

Plaintiffs have not alleged any facts that would support the application of the exception and the realignment of plaintiff Toev as a defendant. Rather, taken as true, the allegations in the Amended Complaint compel the opposite conclusion. *See Smith*, 354 U.S. at 97 (1957) (alignment of the corporation to be determined "by the pleadings and the nature of the dispute"). Mr. Obstfeld admits that the parties who committed the acts he complains of *have not been involved in Toev's management for more than three years*. Am. Compl. ¶¶ 43-45; 52. Indeed, Plaintiffs allege that Toev has no current management. Therefore, the Amended Complaint reveals no basis for any present antagonism between Mr. Obstfeld and Toev.

"[A]ntagonism has generally not been found where the corporation does not, would not, or cannot express opposition to the initiation of the lawsuit." *Netwolves Corp. v. Sullivan*, 2001 WL 492463, at *6 (S.D.N.Y. 2001). Indeed, the Second Circuit has already found that the exception does not apply (and, therefore, the corporation should be aligned as a plaintiff) under circumstances parallel to those alleged in the Amended Complaint. In *Lewis v. Odell*, 503 F.2d 445, 446 (2d Cir. 1974), the plaintiff brought a derivative action against a board member. The corporation went into bankruptcy, at which time bankruptcy trustees took over its management.

9

94875.1

*Id*. at 446-47.  The Court held that the corporation should be aligned as a plaintiff, because the defendant director was no longer in office and the bankruptcy trustees were not accused of any wrongdoing.  *Id.  See also Kartub v. Optical Fashions*, 158 F. Supp. 757, 758-59 (S.D.N.Y. 1958) (finding no antagonism between derivative plaintiff and corporation that is subject of derivative action when one director had died and the other two had resigned, rendering the corporation unable to act); *Taylor v. Swirnow*, 80 F.R.D. 79 (D. Md. 1978) (no antagonism between derivative plaintiff and corporation when defendants did not control corporation at the time of suit); *Liddy v. Urbanek*, 707 F.2d 1222, 1224-25 (11th Cir. 1983) (no antagonism between derivative plaintiff and corporation when plaintiff was the controlling official and 50% shareholder); *Netwolves Corp*, 2001 WL 492463, at *6 (aligning corporation as a plaintiff and dismissing derivative action for lack of subject matter jurisdiction when management is deadlocked and cannot vote to support litigation).

In sum, because Plaintiffs' Amended Complaint fails to identify any antagonism between Mr. Obstfeld and Toev, Toev must be aligned as a plaintiff.  Because Toev and ThermopeutiX are not diverse, the case must be dismissed for lack of subject matter jurisdiction under 28 U.S.C. § 1332(a)(1).

 B. <u>There Are No Claims Arising Under the Patent Laws</u>.

Plaintiffs cannot use phantom patent claims to conjure up an alternative basis for federal jurisdiction.  Plaintiffs mischaracterize the relevant statute, claiming that 28 U.S.C. § 1338(a) supports federal jurisdiction because this case "involves a dispute concerning a patent."  Am. Compl. ¶ 2.  The cited statute, however, does not extend to every claim that merely mentions a patent, but instead limits jurisdiction to "civil action[s] *arising under any Act of Congress relating to patents*."  28 U.S.C. § 1338(a) (emphasis added).  In other words, jurisdiction under

section 1338(a) extends only to those cases in which the plaintiff "establishes either that the federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09 (1988). *See Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 303-04 (2d Cir. 2004) (applying *Christianson* in the copyright context).

Plaintiffs' Amended Complaint contains no allegations that suffice to invoke jurisdiction under 28 U.S.C. § 1338(a). Instead, Plaintiffs plead their claims, even those relating to intellectual property, solely as state law claims of breach of fiduciary duty, tortious interference with contract and with business relations, conversion, breach of contract, and misappropriation of trade secrets. Am. Compl. ¶¶ 52-87. Plaintiffs do not identify a single patent statute (other than the jurisdictional statute), nor do they allege that their right to relief necessarily depends on resolution of a substantial question of federal patent law. Given Plaintiffs' failure to allege that they own any patents, that they have the right to enforce any patents, or that any patents have been infringed, and given their decision to plead only state law causes of action, they have no basis for invoking the patent jurisdictional statute.

In nearly identical circumstances, the Federal Circuit held that allegations that one party used and divulged another party's trade secrets by acts that included applying for a patent were insufficient to invoke federal patent jurisdiction. *See Uroplasty, Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277, 1280 (Fed. Cir. 2001). In *Uroplasty*, the plaintiff's CEO left the plaintiff for a competitor, filing patent applications relating to technology allegedly belonging to the plaintiff. *Id.* at 1279. The plaintiff sued in state court for "misappropriation of trade secrets, breach of fiduciary duty, and breach of contract alleging that [the defendant] improperly used and divulged

11

94875.1

trade secrets and confidential information." *Id.* Following the defendant's removal of the case

to federal district court and a grant of summary judgment, the Federal Circuit remanded the case

to the federal district court with instructions to dismiss the case for lack of subject matter

jurisdiction. *Id.* at 1280. The Court explained as follows:

> The only mention of a patent in Uroplasty's well-pleaded complaint are the
> allegations that [the former CEO] used and divulged Uroplasty's trade secrets and
> confidential information by acts that included the preparation and filing of the
> application for the '406 patent and his involvement in the testing of urological
> bulking agents described in the patent. The '406 patent may be evidence in
> support of Uroplasty's allegations, but *the mere presence of the patent does not
> create a substantial issue of patent law*.

*Id.* (emphasis added). *See also AT & T Co. v. Integrated Network Corp.*, 972 F.2d 1321, 1324

(Fed. Cir. 1992) (claims of misappropriation of proprietary information, breach of fiduciary duty,

and breach of contract did not present a substantial question of patent law). As the Federal

Circuit noted, because the burden of proving claims such as the claims alleged in this case, *i.e.*

that involve only "the mere presence of a patent," "can be met without requiring the resolution of

a substantial issue of patent law," federal jurisdiction may not be invoked under the patent

statute. *Uroplasty*, 239 F.3d at 1280. Accordingly, Plaintiffs may not invoke this Court's

jurisdiction under the federal patent laws.

In sum, the very face of Plaintiffs' Amended Complaint demonstrates that both purported

bases of federal subject matter jurisdiction are unfounded. Complete diversity of citizenship is

absent, and the pleaded claims fail to raise any question of federal patent law. The Court must

dismiss Plaintiffs' lawsuit under Fed. R. Civ. P. 12(b)(1).

94875.1

## II.    THE AMENDED COMPLAINT VIOLATES RULE 23.1.

The Amended Complaint fails to comply with the pleading requirements for bringing a shareholder's derivative action in federal court.  Federal Rule of Civil Procedure 23.1 states in relevant part as follows:

> In a derivative action brought by one or more shareholders or members to enforce a right of the corporation . . . the corporation . . . having failed to enforce a right which may be properly asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder . . . at the time of the transaction of which the plaintiff complains . . . and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.  *The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.*

Fed. R. Civ. P. 23.1 (emphasis added).  Complaints are subject to dismissal for failure to comply with the pleading requirements of Fed. R. Civ. P. 23.1.  *See Markowitz v. Brody*, 90 F.R.D. 542, 548 (S.D.N.Y. 1981).

In this case, Plaintiffs' entire allegation as to demand and futility centers on Arthur Schwartz's former position on the Toev board of directors.  Am. Compl. ¶ 52.  But Plaintiffs fail to allege anything about efforts to make a demand on Toev after Dr. Schwartz resigned from Toev.  Plaintiffs themselves admit that Dr. Schwartz relinquished his shares and resigned from Toev's board of directors (leaving the board vacant) *more than three years ago.  Id.* ¶¶ 43-44. Other than the conclusory assertion that a demand on the Toev board would be futile because Dr. Schwartz sat on that board until three years ago (Am. Compl., ¶ 51), Plaintiffs have not pleaded any facts regarding attempts to obtain the desired action from the corporation.  Rule 23.1 requires a derivative plaintiff to describe specifically his efforts to obtain the desired action from the directors or comparable authority, or from other shareholders.  The purpose of the demand

13

requirement is to give the corporation "the opportunity to take over a suit which has been brought on the corporation's behalf." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 737 F. Supp. 792, 800 (S.D.N.Y. 1990).

The law of the state of incorporation governs the pre-suit demand requirement and the related futility exceptions. *In re Vecco Instruments, Inc.*, 434 F. Supp. 2d 267, 273 (S.D.N.Y. 2006). Whether Plaintiffs' allegations of futility "are sufficient to excuse demand depends on the particular facts of each case and lies within the discretion of the district court." *D'Addario v. Geller*, 264 F. Supp. 2d 367, 394 (E.D. Va. 2003).

Plaintiffs' demand and futility allegation addresses the wrong time period. Because the demand requirement permits the corporation's management "to determine whether in their opinion a suit on behalf of the corporation would comport with the best interest of the corporation" (*Smachlo v. Birkelo*, 576 F. Supp. 1439, 1443 (D. Del. 1983)), it is irrelevant whether the derivative plaintiff has made a demand on former management, much less a director who left the company more than three years ago. Instead, the demand "must be made upon those fiduciaries who are *who are in office at the time the suit is brought*." *Diduck*, 737 F. Supp. at 800-01 (emphasis added).

The Amended Complaint does not allege anything about Mr. Obstfeld's efforts to obtain action from his fellow Toev shareholders, in light of the apparent absence of Toev management personnel after Dr. Schwartz's departure. The Federal Rules expressly require that the derivative plaintiff make a demand on the board or "comparable authority," as well as "on the shareholders." Fed. R. Civ. P. 23.1. Moreover, under Delaware law (which governs derivative actions involving Delaware corporations, such as Toev) the shareholder's demand obligation is "more than pro forma":

14

> [B]efore the shareholder is permitted in his own name, to initiate and conduct a litigation which usually belongs to the corporation, he should show, to the satisfaction of the court, that ***he has exhausted all the means within his reach*** to obtain within the corporation itself, the redress of his grievances, or action in conformity to his wishes.  He must make an earnest, not a simulated effort, ***with the managing body of the corporation***, to induce remedial action on their part, and that must be made apparent to the court.

*Smachlo*, 576 F. Supp. at 1443-44 (emphasis added) (*quoting Hawes v. Oakland*, 104 U.S. 450, 460-61 (1882)).  Other courts have applied the same requirement in circumstances nearly identical to this case.  *See Pourroy v. Gardner*, 10 P.2d 815, 817-18 (Cal. App. 1932) (dismissing derivative claim for failure to comply with demand requirement where corporation had been without a board of directors for several months and plaintiff shareholders were "in a position to elect a board of directors and other officers of their own choosing, and to proceed in the name of the corporation").  Plaintiffs' bare allegation of futility is insufficient to comply with Fed. R. Civ. P. 23.1 and with Delaware corporate law.  This deficiency alone warrants dismissal of all Plaintiffs' derivative claims.

## III.    THE COURT LACKS PERSONAL JURISDICTION OVER GLEN LIEBER.

Even if the Court had subject matter jurisdiction, Plaintiffs' claims against Glen Lieber must be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  Mr. Lieber does not have sufficient contacts with New York to subject him to general personal jurisdiction, nor does he have sufficient contacts with New York relating to Plaintiffs' claim to justify his being "haled into court" in this forum.  Accordingly the exercise of jurisdiction over Glen Lieber in this case violates New York law as well as due process.

### A.    New York's Long-Arm Statute Does Not Reach Glen Lieber.

The amenability of an out-of-state party to suit in a federal district court "is determined by the law of the state in which the district court sits."  *Sole Resort, S.A. de C.V. v. Allure Resorts*

15

94875.1

*Mgmt., LLC*, 450 F.3d 100, 102-03 (2d Cir. 2006) (*citing* Fed. R. Civ. P. 4(k)(1)(A)).  New

York's long-arm statute permits the Court to exercise personal jurisdiction ever Glen Lieber in

these circumstances only if he "transacts any business within the state," "commits a tortious act

within the state," or "commits a tortious act without the state causing injury to person or property

within the state," as long as the particular cause of action is one "arising from" any of those acts.

*See Thomas v. Ashcroft*, 470 F.3d 491, 495-96 (2d Cir. 2006); N.Y. C.P.L.R. § 302(a).

There is no allegation that Glen Lieber committed an act causing injury to Toev (a

Delaware corporation) *in New York*.  With the exception of a single meeting in New York (which

is not the "act" for which Mr. Lieber is being sued), all of Mr. Lieber's participation in Toev's

affairs was carried out in California.  Moreover, ThermopeutiX is a Delaware corporation, and it

is based in San Diego, California.  Among the alleged breaches of fiduciary duty, conversion,

and misappropriation of trade secrets pleaded in the Amended Complaint, there are no factual

allegations linking Mr. Lieber to any conduct with a New York nexus.  Accordingly, the Court

lacks personal jurisdiction over Glen Lieber as a matter of New York law.

      B.    <u>Exercise of Jurisdiction Over Glen Lieber Would Violate Due Process</u>.

Even if the Court were to find New York's long-arm statute satisfied, requiring Glen

Lieber to litigate in New York would be unconstitutional.  When "there is a statutory basis for

jurisdiction, the court must then determine whether New York's extension of jurisdiction in such

a case would be permissible under the Due Process Clause of the Fourteenth Amendment."  *Bank*

*Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002).  The Due

Process Clause "operates to limit the power of a State to assert in personam jurisdiction over a

nonresident defendant."  *Helicopteros Nacionales De Columbia, S.A. v. Hall*, 466 U.S. 408, 414

(1984).  In order to satisfy due process requirements, a defendant must have "certain minimum

contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).

In deciding whether the exercise of jurisdiction comports with federal due process, courts examine whether there is specific personal jurisdiction or general personal jurisdiction. *Helicopteros Nacionales*, 466 U.S. at 414. Specific personal jurisdiction exists only when the claim "arises out of, or relates to, the defendant's contacts with the forum" and the defendant "purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Bank Brussels Lambert*, 305 F.3d at 127. Mr. Lieber attended a single meeting in New York in connection with his work for Toev, a meeting which has no special significance to Plaintiffs' claims against him. Lieber Decl. ¶ 5. As discussed above, the only connection between the allegations in the Amended Complaint and this forum is the stock purchase agreement (Am. Compl. ¶ 24), which has absolutely nothing to do with Mr. Lieber or the claims against him. Because the claims against Mr. Lieber have no nexus with New York, specific personal jurisdiction is not present.

Nor does this Court have general personal jurisdiction over Mr. Lieber. "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test" than that applicable to specific jurisdiction. *Metro. Life Ins. Co. v. Robertson-Ceco, Corp.*, 85 F.3d 560, 568 (2d Cir. 1996). General jurisdiction exists only when the defendant's contacts with the forum are "ongoing and systematic." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 152 (2d Cir. 2001). Mr. Lieber does not have ongoing and systematic contacts with New York that would subject him to general personal jurisdiction here. Lieber Decl. ¶ 5. Mr. Lieber has no bank accounts or other assets, such as real property, in New York. *Id.* ¶ 4. Mr. Lieber's isolated visits to New York are insufficient to

17

confer general jurisdiction. *See Bank Brussels Lambert*, 305 F.3d at 127 (agreeing with district

court's conclusion that general jurisdiction could not be maintained even though defendant

maintained an apartment in New York, transmitted newsletters and mailings into New York, and

earned $1 million annually representing New York clients) (*citing Bank Brussels Lambert v.

Fiddler Gonzalez & Rodriguez*, 2001 WL 893362, at *6-7 (S.D.N.Y. 2001)).  Accordingly, the

Court should dismiss the Amended Complaint against Mr. Lieber under Fed. R. Civ. P. 12(b)(2).

## IV.    COUNTS TWO AND FIVE DO NOT STATE ACTIONABLE CLAIMS.

Even if the Court had jurisdiction, the Court should dismiss counts two and five of the

Amended Complaint because they fail to state claims upon which relief can be granted.  *See* Fed.

R. Civ. P. 12(b)(6).  Motions under Rule 12(b)(6) assume the truth of the plaintiff's factual

allegations and test the legal sufficiency of the claim.  *McCall v. Pataki*, 232 F.3d 321, 322 (2d

Cir. 2000).  "[T]he sufficiency of a complaint is a matter of law that the court is capable of

determining based on its own reading of the pleading and knowledge of the law."  *Id*. at 323-24.

### A.    Count Two Does Not State A Claim.

The Court should dismiss count two of the Amended Complaint because Plaintiffs'

allegations, even if true, do not give rise to an actionable fiduciary duty claim.  A breach of

fiduciary duty claim requires the existence of a fiduciary relationship.  *See In re NSSE Specialists

Sec. Litig*., 405 F. Supp. 281, 302 (S.D.N.Y. 2005); *IT Litig. Trust v. D'Aniello*, 2005 WL

3050611, at *13 (D. Del. 2005).  Obstfeld does not allege that Defendants breached, much less

owed, a fiduciary duty to him as a Toev creditor.

In count two of the Amended Complaint, Obstfeld seeks to recover damages from

*Defendants* based on *Toev's* failure to repay a $50,000 loan to Obstfeld.  Am. Compl. ¶¶ 61-63.

Obstfeld does not allege that Defendants were signatories on the promissory note or that they

18

owed him a duty as a Toev creditor.  The only allegation is that Defendants owed and breached a

fiduciary duty to *Toev*.  *Id.* ¶ 54.  The alleged beneficiary of the fiduciary duty, Toev, was not

harmed by its own alleged failure to pay Defendant Obstfeld $50,000 – much less the $450,000

Obstfeld now claims to be owed.  Accordingly, count two fails to state a fiduciary duty claim and

must be dismissed.

      B.    <u>Count Five Does Not State A Claim</u>.

Plaintiffs' conversion claim is not recognized under New York law.  Here, the "property"

allegedly converted is "a treatment" and "other proprietary information."  Am. Compl. ¶¶ 14; 78.

That is, Plaintiffs allege that "Defendants have wrongfully exercised dominion and control over

the Brain Cooling Method and other proprietary information belonging to Toev."  *Id.* ¶ 78.  The

Amended Complaint defines "Brain Cooling Method" as "a putative treatment for the

approximately 600,000 people per year who suffer strokes, as well as a novel method of cooling

the brain so as to mitigate the negative effects of stroke."  *Id.* ¶ 14.

"Under New York law, the general rule is that a claim for conversion does not lie for the

withholding of indefinite, intangible, and incorporeal species of property."  *Phansalkar v.*

*Andersen Weinroth & Co., L.P.*, 175 F. Supp. 2d 635, 639 (S.D.N.Y. 2001).  *See also Speigel v.*

*Quality Brokers of Am. Coop., Inc.*, 1992 WL 349799, at *6 (S.D.N.Y. 1992) (conversion not

applicable to a provision in a non-exclusive license); *Ippolito v. Lennon*, 542 N.Y.S.2d, 3, 6 (1st

Dept. 1989) (conversion does not apply to musician's intangible property interest in concert

performance).  Plaintiffs' conversion claim relates to the very sort of "indefinite, intangible, and

incorporeal property" for which New York law provides no conversion remedy.  The Court

should dismiss the claim.

## V.    COUNTS TWO, FOUR, FIVE, AND SEVEN ARE TIME-BARRED.

The allegations in Plaintiffs' Amended Complaint conclusively establish that counts two, four, five, and seven are barred by the applicable statutes of limitation.  Recovery in a federal diversity action premised on a state-created right is barred if the applicable state statute of limitations has expired.  *See Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 112 (1945).  In diversity cases, federal courts in this District "must apply New York's statute-of-limitations rules."  *Iacobelli Constr., Inc. v. County of Monroe*, 32 F.3d 19, 27 (2d Cir. 1994).

### A.    Count Two Is Barred By New York's Statute of Limitations.

The Court should dismiss the second count of the Amended Complaint – for breach of fiduciary duty – because it is untimely under New York's statute of limitations.  Under New York law, "a cause of action for breach of fiduciary duty is governed by a six-year statute of limitations where the relief sought is equitable in nature, or *by a three-year statute of limitations where the only relief sought is money damages*."  *Weisenthal v. Weisenthal*, 40 A.D.3d 1078, 583 (2d Dept. 2007) (emphasis added) (*citing* N.Y. C.P.L.R. § 214(4)).

As discussed above, in count two Plaintiff Obstfeld seeks only money damages relating to Toev's alleged failure to repay his $50,000 loan, triggering the three year statute of limitations under N.Y. C.P.L.R. § 214(4).  Am. Compl. ¶¶ 62-63.  The alleged breaches of fiduciary duty are Defendants' purported usurpation of corporate opportunities in which Toev had an interest, forming ThermopeutiX for the purpose of benefiting from trade secrets and proprietary information belonging to Toev, and using their positions as officers, directors, employees, shareholders, and/or consultants of Toev to engage in self-interested transactions.  *Id.* ¶ 55.  Defendants formed ThermopeutiX on May 27, 2004.  *Id.* ¶ 38.  Defendants had allegedly breached duties to Toev before May 2004, by making arrangements for ThermopeutiX's

20

formation during the time they owed duties to Toev and its shareholders. *Id.* ¶¶ 41-42. Solar and Renaissance ended their relationship with Toev on May 7, 2004. *Id.* ¶¶ 32-33, 37. All of these alleged breaches occurred in or before May of 2004. Thus, assuming the truth of Plaintiffs' allegations, the complaint was not filed (much less served) within three years of the alleged breach of fiduciary duty. Accordingly, count two is time-barred and must be dismissed.

B.      Count Four Is Barred by New York's State of Limitations.

The Court should dismiss count four – tortious interference with business relations – because it is untimely under New York's statute of limitations. Under New York law, tortious interference claims must be brought within three years. *See* N.Y. C.P.L.R. § 214(4); *H&P Rsch., Inc. v. Integra Realty, Inc.*, 685 N.Y.S.2d 43, 43-44 (1st Dept. 1999). The cause of action accrues "at the time the injury is sustained." *Rosemeier v. Schenker Int'l, Inc.*, 895 F. Supp. 65, 66 (S.D.N.Y. 1995).

Count four is based on the allegation that "[i]n May 2004, despite the fact that Ignition had found prospective investors willing to invest in Toev, [Ronald] Solar abruptly and without explanation refused to allow Toev to consider offers of investment in Toev from prospective investors sourced by Ignition." Am. Compl. ¶ 74. Because Plaintiffs commenced this action more than three years later, the Court should dismiss count four.

C.      Counts Five and Seven Are Barred By New York's Statute of Limitations.

The Court should dismiss counts five and seven – conversion and trade secret misappropriation, respectively – because they are untimely under New York's statute of limitations. New York's statute of limitations for a conversion claim is three years. *See* N.Y. C.P.L.R. § 214(3). Claims for misappropriation of trade secrets also must be brought within

21

three years.  *See* N.Y. C.P.L.R. § 214(4); *Andrew Greenberg, Inc. v. Svane, Inc.*, 36 A.D.3d 1094, 1098 (3d Dept. 2007).

      As discussed above, count five is the conversion claim based on Defendants' alleged exercise of dominion and control over Toev's intangible property.  Am. Compl. ¶ 78.  Plaintiffs allege that the individual Defendants misappropriated Toev's technology and, in May 2004, "formed ThermopeutiX as a vehicle to profit from their misappropriation."  *Id.* ¶¶ 38; 41-42. According to the allegations in the Amended Complaint, the alleged conversion occurred more than three years before Plaintiffs commenced this action.

      Similarly, Plaintiffs' misappropriation of trade secrets claim is purportedly based upon Plaintiffs' allegation that Defendants "misappropriated trade secrets and other proprietary information belonging to Toev and founded ThermopeutiX for the purpose of profiting from their misappropriation . . . ."  Am. Compl. ¶ 86.  Such alleged misappropriation, culminating in the May 2004 formation of ThermopeutiX, occurred, if at all, more than three years before Plaintiffs commenced this action.  *Id.* ¶¶ 38; 42-42.  Accordingly, the Court should dismiss counts five and seven.

//

**CONCLUSION**

Based on the foregoing, Defendants respectfully request that the Court grant their motion and dismiss Plaintiffs' Amended Complaint in whole and in part, under Fed R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(6), and 23.1, for all of the reasons set forth above.  Defendants also respectfully request oral argument on their motion.

Dated:        New York, New York
              August 24, 2007

                              CONSTANTINE CANNON LLP


                              By:___s/ Kerin E. Coughlin___
                                    Kerin E. Coughlin
                                    Stacey Anne Mahoney
                                    450 Lexington Avenue, 17th Floor
                                    New York, New York 10017
                                    Phone: (212) 350-2700
                                    Fax: (212) 350-2701
                                    kcoughlin@constantinecannon.com

                              FREDRIKSON & BYRON, P.A.

                                    Laurie J. Miller (*pro hac vice* pending)
                                    200 Sixth Street, Suite 4000
                                    Minneapolis, Minnesota 55402
                                    Phone: (612) 492-7000
                                    Fax: (612) 492-7077
                                    lmiller@fredlaw.com

                                    *Attorneys for Defendants Ronald Solar,*
                                    *Renaissance Biomedical, Inc., Glen Lieber*
                                    *and ThermopeutiX, Inc.*

94875.1