UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
LAWRENCE OBSTFELD, individually and
derivatively on behalf of TOEV MEDICAL
CORPORATION, and IGNITION VENTURES,
INC.,                                                                   Civil Action No. 07 CV 5847 (DAB)(FM)

                         Plaintiffs,

           -against-                                            ECF CASE

ARTHUR SCHWARTZ, RONALD SOLAR,
RENAISSANCE BIOMEDICAL, INC., GLEN
LIEBER, and THERMOPEUTIX, INC.,

                         Defendants.
----------------------------------------------------------x

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................I

TABLE OF AUTHORITIES ..........................................................................................II

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ..............................................................................................1

ARGUMENT ..................................................................................................................4

THIS COURT HAS SUBJECT MATTER JURISDICTION.........................................4

    A.    The Parties are Completely Diverse Because Toev Should be Aligned as a Defendant.......4

    B.    The Court May Exercise Subject Matter Jurisdiction Over This Action Because Plaintiffs' Right to Relief Depends on the Resolution of a Substantial Question of Patent Law ..........9

THE AMENDED COMPLAINT COMPLIES WITH RULE 23.1 ................................12

GLEN LIEBER IS SUBJECT TO PERSONAL JURISDICTION IN NEW YORK.....................15

THE SECOND AND FIFTH CAUSES OF ACTION IN THE AMENDED COMPLAINT ARE NOT SUBJECT TO DISMISSAL.........................................................................................18

    A.    The Second Cause of Action States a Claim for Breach of Fiduciary Duty ......................18

    B.    The Fifth Cause Of Action States A Claim For Conversion .................................................19

DEFENDANTS' MOTION BASED ON THE STATUTE OF LIMITATIONS  IS WITHOUT MERIT.....................................................................................................................19

    A.    Defendants Are Estopped From Asserting the Statute of Limitations as a Defense Under the Doctrine of Equitable Estoppel ...................................................................................20

    B.    A Six-Year Statute of Limitations Applies to Plaintiffs' Second Cause of Action............21

    C.    Plaintiffs' Fourth Cause of Action is Not Time-Barred .......................................................22

    D.    The Fifth and Seventh Causes of Action in the Amended Complaint are not Time-Barred ........................................................................................................23

CONCLUSION................................................................................................................24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A.I. Trade Finc., Inc. v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993) ................................................. 15

*Architectronics, Inc. v. Control Systems, Inc.*, 935 F.Supp. 425 (S.D.N.Y. 1996) ............................... 23, 24

*Astroworks v. Astroexhibit, Inc.*, 257 F.Supp.2d 609 (S.D.N.Y. 2003) ...................................... 19

*AT & T Co. v. Integrated Network Corp.*, 972 F.2d 1321 (Fed Cir. 1992) ................................. 12

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988) ............................................. 9

*Dillon v. Berg*, 326 F.Supp. 1214 (D. Del 1971) ............................................................ 6, 7

*Direct Mail Production Svcs. Ltd. v. MBNA Corp.*, 2000 WL 1277597 (S.D.N.Y. 2000) ........................ 17

*Duffey v. D.C. Wheeler*, 820 F.2d 1161 (11th Cir. 1987) .................................................. 4

*Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983) ........................ 9

*Grand River Enterprises Six Nations v. Pryor*, 425 F.3d 158 (2d Cir. 2005) ............................. 15

*Highland Supply Company v. Klerk's Flexible Packaging, B.V.*, 2005 WL 3534211(S.D. Ill. 2005) .... 9, 11

*In re Veeco Instruments, Inc.*, 434 F.Supp.2d 267 (S.D.N.Y. 2006) .................................... 13, 14

*Intellectual Property Development, Inc. v. TCI Cablevision of California*,
     248 F.3d 1333 (Fed. Cir. 2001) ...................................................................... 11

*Inventions Corp. v. Hobbs*, 244 F. 430 (2d Cir. 1917) .................................................... 7

*Kartub v. Optical Fashions*, 158 F.Supp. 757 (S.D.N.Y. 1958) ......................................... 8

*Kelly v. MD Buyline, Inc.*, 2 F.Supp.2d 420 (S.D.N.Y. 1998) ........................................ 18

*Kronisch v. U.S.*, 150 F.3d 112 (2d Cir. 1998) ........................................................ 15

*Levisohn, Lerner, Berger & Langsam v. Medical Taping Sys., Inc.*, 10 F.Supp.2d 334 (S.D.N.Y. 1998) . 17

*Lewis v. Odell, 503 F.2d 445* (2d Cir. 1974) ......................................................... 4, 8

*Liddy v. Urbanek*, 707 F.2d 1222 11th Cir. 1983) .................................................... 4, 8

*Nanopierce Technologies, Inc. v. Southridge Capital Management LLC*, 2003 WL 22882137 (S.D.N.Y.
     2003) ................................................................................................ 17

*Netwolves Corp. v. Sullivan*, 2001 WL 492463 (S.D.N.Y. 2001) ........................................ 8

*Phansalkar v. Andersen Weinroth & Co. L.P.*, 175 F.Supp.2d 635 (S.D.N.Y. 2001) .................... 19

*Research Frontiers Incorporated v. Marks Polarized Corporation*, 290 F. Supp. 725 (E.D.N.Y. 1968) .. 11

*Roby v. Corporation of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993) ........................................ 17

*Rogers v. Valentine*, 306 F.Supp. 34 (S.D.N.Y. 1969) ................................................. 6

*Rosemeier v. Schenker Int'l*, 895 F.Supp 65 (S.D.N.Y. 1995) .......................................... 22

*Smith v. Sperling*, 354 U.S. 91 (1957) ............................................................... 5

*Swanson v. Traer*, 354 U.S. 114 (1957) ............................................................... 5

*Textile Productions, Inc. v Mead Corporation*, 134 F.3d 1481 (Fed. Cir. 1998) .................... 10, 11

*Thyroff v. Nationwide Mutual Ins. Co.*, 460 F.3d 400 (2d Cir. 2006) ................................. 23

*U.S. Valves, Inc. v. Dray*, 212 F.3d 1368 (Fed Cir. 2000) ........................................................ 11

*Uroplasty, Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277 (Fed. Cir 2001) ......................... 12

*ZB Holdings, Inc. v. White*, 144 F.R.D. 42 (S.D.N.Y. 1992) ................................................... 4, 5

## STATE CASES

*Arnold v. Society for Savings Bancorp, Inc.*, 678 A.2d 533 (Del. 1996) .............................. 18, 20

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) ........................................................................ 13

*Ed Moore Adv. Agency, Inc. v. I.H.R., Inc.*, 114 A.D.2d 484 (2d Dept. 1985). ........................ 15

*Gleason v. Spota*, 194 A.D.2d 764 (2d Dept. 1993) ................................................................ 20

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988) ............................................... 15, 16, 18

*Malone v. Brincat*, 722 A.2d 5 (Del. 1998) ............................................................................ 20

*Matzan v. Eastman Kodak Co.*, 134 A.D.2d 863 (4th Dept. 1987)........................................... 19

*Motor Vehicle Accident Indemnification Corp. v. Aetna Casualty & Surety Co.*, 89 N.Y.2d 214 (1996)..23

*Norwalk v. J.P. Morgan Co., Incorporated*, 268 A.D.2d 413 (2d Dept. 2000) ........................ 20

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993)....................................................................... 13

*Republic of Haiti v. Duvalier*, 211 A.D.2d 379 (1st Dept. 1995) .......................................... 23

*Spitzer v. Schussel*, 7 Misc. 3d 171 (Sup. Ct., New York Co., 2005) ...................................... 22

*Vigilant Ins. Co. of America v. Housing Authority of the City of El Paso, Texas*, 87 N.Y.2d 36 (1995) ...23

*Zeltner  v. Zeltner Brewing Co.*, 174 N.Y. 247 (1903) ............................................................. 7

## STATUTES AND REGULATIONS

§1338(a) ...................................................................................................................................... 9

28 U.S.C. §1331 ......................................................................................................................... 9

28 U.S.C. §1332(a)(1)............................................................................................................... 8

8 Del. C. § 141(b) ...................................................................................................................... 6

CPLR §213(7).............................................................................................................................21

CPLR §302(a)(1) ...................................................................................................................... 15

CPLR 214(3)..............................................................................................................................23

CPLR 214(4)..............................................................................................................................23

Fed. R. Civ. P. 12(b)(2)..............................................................................................................18

Fed. R. Civ. P. 23.1 ................................................................................................................... 14

Fed. R. Civ. P. 4(k)(1)...............................................................................................................15

## PRELIMINARY STATEMENT

Defendants' motion to dismiss plaintiffs' Amended Complaint should be denied in its entirety.  The allegations in the Amended Complaint, which detail defendants' massive and undeniable breaches of fiduciary duty, establish that: (1) this Court has subject matter jurisdiction because Toev Medical Corporation should be aligned as a defendant for purposes of diversity jurisdiction; (2) this Court has subject matter jurisdiction due to the patent issues that must be addressed to resolve plaintiffs' claims; (3) the Amended Complaint satisfies the prerequisites for pleading a derivative action; (4) Glen Lieber, a former officer of Toev, is subject to personal jurisdiction in New York; (5) the second and fifth causes of action in the Amended Complaint are not subject to dismissal for failure to state a cause of action; and (6) the second, fourth, fifth, and seventh causes of action in the Amended Complaint are not barred by the statute of limitations.

## STATEMENT OF FACTS

In 2000, defendant Dr. Arthur Schwartz ("Schwartz") and plaintiff Lawrence Obstfeld ("Obstfeld") formed Toev Medical Corporation ("Toev") for the purpose of further developing and commercializing a selective brain cooling method ("Brain Cooling Method") and other related medical technologies that were based on Schwartz's research.  Amended Complaint ("Am. Cmpl.") ¶ 15.

Columbia University ("Columbia") owned the rights to certain method patents covering limited components of the Brain Cooling Method ("Columbia Patents") due to Schwartz's work on the Brain Cooling Method while he was a professor there.  Am. Cmpl. ¶ 18.  Though he was leaving Columbia for Mount Sinai Hospital, Schwartz believed that it was necessary for Toev to obtain a license from Columbia for use of the Columbia Patents so that he could further develop the Brain Cooling Method for Toev.  *Id.* ¶ 19.

On February 4, 2000, Obstfeld loaned Toev $50,000 ("Obstfeld Loan") so that Toev could purchase a license to use the Columbia Patents.  Am. Cmpl. ¶ 20.  On that same day, February 4, 2000, Columbia and Toev entered into an exclusive licensing agreement ("Exclusive License") with

Columbia whereby Toev was granted the exclusive right to throughout the world to develop, manufacture, use, sell, have sold, rent, or lease products concerning the Brain Cooling Method and other related medical technology. Obstfeld Decl., Ex. A at p. 2. Concurrently with the Exclusive License, Toev and Columbia entered into a Stock Purchase Agreement ("Stock Purchase Agreement") which set the terms of the purchase of the Exclusive License. Am. Cmpl. ¶ 22. Toev and all of its stockholders at the time, including Obstfeld, Schwartz, and Columbia, signed the Stock Purchase Agreement. Id. at ¶ 24. The Stock Purchase Agreement contains a governing law clause that fixes the venue of any disputes arising under it in the United States District Court for the Southern District of New York or a court in New York County of the City of New York. Obstfeld Decl., Ex. B at ¶ 11.12. Additionally, the governing law clause in the Stock Purchase Agreement sets New York law as the law governing any disputes under the agreement. Id.

Obstfeld and Toev entered into a promissory note agreement setting forth the terms of repayment of the Obstfeld Loan. Am. Cmpl. ¶ 21. However, soon after Toev received the Obstfeld Loan, Schwartz began to limit Obstfeld's access to information concerning Toev. Id. ¶ 25. Toev has not made repayment of the Obstfeld Loan. Id. ¶ 61

In September 2000, Schwartz, who was then chief executive officer of Toev, announced that defendant Ronald Solar ("Solar") had agreed to take the position of director of research and development of Toev. Am. Cmpl. ¶ 26.

In December 2002, Toev had entered into a contract with plaintiff Ignition Ventures, Inc. ("Ignition"), whereby Ignition agreed to provide start-up consulting to Toev in exchange for a retainer fee and 7% of the outstanding shares of Toev. Am. Cmpl. ¶ 27. Ignition fully performed under its contract with Toev, but Toev has failed to pay Ignition its full retainer and has not issued shares to Ignition in accordance with the contract. Id. ¶¶ 27 - 28.

In May or June 2003, Schwartz appointed Solar to the position of chief executive officer of Toev. In May or June 2003, defendant Glen Lieber ("Lieber") was appointed president of Toev and vice-president of research and development of Toev. Id. ¶ 30. In August 2003, Schwartz, the holder of

2

more than 70% of the shares of Toev, unilaterally established himself as the sole director of Toev.  *Id.* ¶ 31.

In September 2003, Toev entered into a consulting contract with defendant Renaissance Biomedical, Inc. ("Renaissance"), a company of which Solar was the sole director.  Am.  Cmpl. ¶¶ 32-33.  The contract between Toev and Renaissance expressly provided that Renaissance agreed to assist Toev in the development and commercialization of the Brain Cooling Method and other related medical technologies.  *Id.* ¶ 33.

In February 2004, Ignition advised Schwartz that several investors were interested in making investments in Toev.  Am. Cmpl. ¶ 35.  In May 2004, Solar refused to allow Toev to negotiate to accept funding sourced by Ignition.  *Id.* ¶ 36.

In an e-mail, dated May 7, 2004, Solar stated that he had chosen not to renew his contract with Toev.  Am. Cmpl. ¶ 37.  On May 27, 2004, a corporate filing was made in connection with the formation of ThermopeutiX, Inc. ("ThermopeutiX").  *Id.* ¶ 38.  On that filing, Lieber was listed ThermopeutiX's agent for the service of process.  *Id.* ¶ 38.  Schwartz, Solar, Lieber, and Renaissance are the founders of ThermopeutiX and are officers, directors, and/or shareholders of ThermopeutiX.  Id. ¶ 39.  Schwartz, Solar, Lieber, and Renaissance misappropriated the Brain Cooling Method and other related medical technologies from Toev for their own benefit and formed ThermopeutiX as a vehicle to profit from their misappropriation and breach of their fiduciary duties.  *Id.* ¶ 41.

In an e-mail, dated June 20, 2004, Schwartz, who has then the sole member of Toev's board of directors, announced that, effective immediately, he was relinquishing all shares of stock in Toev and purportedly resigning from his position as an officer and director of Toev.  Am. Cmpl. ¶ 43.  Although he had installed himself as the sole member of the board of directors of Toev, Schwartz took no steps to fill the vacancy left by his purported resignation as the sole member of Toev's board of directors.  *Id.* ¶ 45.

In a May 24, 2005 press release, SurModics, Inc. ("SurModics"), a leading provider of medical technologies to the healthcare industry, announced that it was investing $1 million in

ThermopeutiX for development of the Brain Cooling Method and related medical technologies.  Am.

Cmpl. ¶ 47.  Plaintiffs only learned of Schwartz and Solar's involvement in ThermopeutiX by reading the

SurModics press release. *Id.* ¶ 50. Lieber and Solar have submitted an application, which was assigned to

ThermopeutiX, for a patent concerning aspects of the Brain Cooling Method and other proprietary

medical technologies that had been misappropriated from Toev by Schwartz, Solar, Lieber, and

Renaissance.  Obstfeld Decl., Ex. D.

**ARGUMENT**

**I.**

**THIS COURT HAS SUBJECT MATTER JURISDICTION**

A.    The Parties are Completely Diverse Because Toev Should be Aligned as a
<u>Defendant</u>

Plaintiffs' reliance on diversity as a basis for this Court's jurisdiction over this matter is

proper because Toev should be aligned as a defendant.  The alignment of Toev as a defendant would

reflect the actual antagonisms between plaintiffs, Toev, and Schwartz, who purported to divest himself of

his majority interest in Toev and resign from his position as sole member of the board of directors of

Toev in furtherance of his breaches of fiduciary duty.

"[T]he federal courts are required to realign parties according to their real interests so as

to produce an actual collision of interests."  *Lewis v. Odell,* 503 F.2d 445, 447 (2d Cir. 1974).  "[T]he

general rule is that the corporation in a derivative suit should be aligned as a plaintiff since it is the real

party in interest."  *ZB Holdings, Inc. v. White*, 144 F.R.D. 42, 45 (S.D.N.Y. 1992).  "However, an

exception to this rule has been carved out for situations where aligning the corporation as a plaintiff

would not provide a 'real collision' of interests."  *Id. citing Duffey v. D.C. Wheeler,* 820 F.2d 1161, 1163

(11th Cir. 1987).  "[T]he final alignment of the parties should reflect the actual antagonisms between the

plaintiffs, the corporation, and the directors."  *ZB Holdings*, 144 F.R.D. at 45 *quoting Liddy v. Urbanek*,

707 F.2d 1222, 1224 (11th Cir. 1983) (internal quotations omitted).

Critically, the determination of the proper alignment of the parties is "a practical not a mechanical determination and is resolved by the pleadings and the nature of the dispute." *Smith v. Sperling*, 354 U.S. 91, 97 (1957).  Antagonism warranting the alignment of the corporation in a derivative action as a defendant generally exists "whenever the management is aligned against the stockholder and defends a course of conduct which he attacks." *Smith*, 354 U.S. at 95.  "Whenever the management refuses to take action to undo a business transaction or whenever . . . it so solidly approves it that any demand to rescind would be futile, antagonism is evident." *Id.* at 97.

The allegations contained in the Amended Complaint are precisely the type of allegations required to support a finding of antagonism.  A finding of antagonism is warranted based on the allegation in the Amended Complaint that, in breach of their fiduciary duties to the shareholders, the officers and directors of Toev misappropriated proprietary and confidential information from Toev and formed ThermopeutiX in order to profit from their disloyalty and faithlessness.  Am. Cmpl. ¶¶ 40 - 42, 55.  That allegation quintessentially supports a finding of antagonism.  "There will, of course, be antagonism between stockholder and the management where the dominant officers and directors are guilty of fraud or misdeeds."  *Smith*, 354 U.S. at 1114 - 1115.

The antagonism and alignment of the management of Toev against plaintiffs is further demonstrated by the allegations in the Amended Complaint relating to Obstfeld's status as a creditor of Toev and Toev's breach of its contract with Ignition.  It is alleged in the Amended Complaint that, due to the breaches of fiduciary duty of Toev's management and board of directors, Toev has failed to make payment of a $50,000 loan that Obstfeld made to Toev.  Am. Cmpl. ¶¶ 21, 61 - 63.  It is also alleged in the Amended Complaint that, due to the breaches of fiduciary duty of Toev's management and board of directors, Toev breached a contract with Ignition, under which Ignition is entitled, among other things, to 7% of Toev's outstanding stock and a retainer fee.  Am. Cmpl. ¶¶ 27 - 28, 65 - 67.

"Ample authority holds that if the complaint in a derivative action alleges that the controlling shareholders or dominant officials of the corporation are guilty of fraud or malfeasance, then antagonism exists, and the corporation should be aligned as a defendant." *ZB Holdings, Inc.*, 144 F.R.D.

5

at 46 *citing Swanson v. Traer*, 354 U.S. 114, 115-16 (1957); *see also Rogers v. Valentine*, 306 F.Supp. 34, 39 (S.D.N.Y. 1969) ("[w]henever the corporation is antagonistic it must be aligned as a real-party defendant").

  Defendants attempt to escape this Court's subject matter jurisdiction based on their factually and legally deficient assertion that Toev is not actively antagonistic to plaintiffs' interests. That argument must be rejected.  Without citing to the Amended Complaint, defendants claim that "[p]laintiffs allege that Toev has no current management."  Memorandum of Law in Support of Defendants Ronald Solar, Renaissance Biomedical, Inc., Glen Lieber, and ThermopeutiX, Inc.'s Motion to Dismiss ("Def. Memo of Law"), p. 9.  Given that defendants fail to provide a citation for that statement, it is not surprising that no such allegation is made in the Amended Complaint.[1]  Plaintiffs do not allege that Toev has no current management.  Rather, plaintiffs allege that Arthur Schwartz, an officer, the sole director, and majority shareholder of Toev, *purportedly* resigned from his position as an officer and director of Toev.  Am. Cmpl. ¶¶ 43 - 46 (emphasis added).  Plaintiffs further allege that Schwartz's conduct, including his purported resignation as sole member of the board of directors of Toev, was a self-interested action taken in breach of his fiduciary duties to Toev and its shareholders and in furtherance of defendants' scheme to misappropriate Toev's proprietary and confidential information for personal profit. Am. Cmpl. ¶ 55.

  The word "purportedly," which is used to describe Schwartz's resignation in the Amended Complaint, carries a great deal of significance because Schwartz's attempt, in breach of his fiduciary duty to Toev and its shareholders, to resign as the *sole member* of the board of directors of Toev was ineffective as a matter of law.  Toev is a Delaware corporation.  Am. Cmpl. ¶ 6.  Generally, under Delaware law, any director may resign at any time upon notice to the corporation.  *See Dillon v. Berg*, 326 F.Supp. 1214, 1223 -24 (D. Del 1971) *aff'd* 453 F.2d 876 (3d Cir. 1971) (construing Delaware law); 8 Del. C. § 141(b).  However, a resignation is invalid, and will be disregarded, where the corporate

---

[1] Defendants also state that in paragraphs 43 - 45 and 52 of the Amended Complaint, "Mr. Obstfeld admits that the parties who committed the acts he complains of *have not been involved in Toev's management for more than three years*."  Def. Mem. of Law, p. 9.  There is no such allegation in the Amended Complaint.

agent's relation to the subject matter is substantially adverse to the corporation or the resignation is utilized to perpetrate a wrong. *Inventions Corp. v. Hobbs*, 244 F. 430, 443 (2d Cir. 1917) (construing Delaware law and holding that a resignation utilized to perpetrate a wrong to be "futile and of no effect") *citing Zeltner v. Zeltner Brewing Co.*, 174 N.Y. 247, 253 (1903) (holding that resignations for improper purposes are neither legal nor effective); *Dillon*, 326 F.Supp. at 1224 (holding that a resignation given in a director's "own interest and not as an agent of the corporation" was ineffective). The "courts have expressed their condemnation of proceedings by which resignations of officers or directors of a corporation are attempted in order to effectuate a fraud." *Inventions Corp.*, 244 F. at 443.

On August 18, 2003, Pursuant to Section 228 of the General Corporation Law of the State of Delaware, Schwartz unilaterally installed himself as the sole director of Toev. Obstfeld Decl., Ex. E. Schwartz agreed, subject to Toev's by-laws, to remain the sole director of Toev until the "next annual meeting of shareholders or until his successor or successors are qualified." *Id.* Only Schwartz, as the sole member of Toev's board of directors had the ability to convene a meeting of shareholders, which he never convened, or to elect a successor, which he never did. Obstfeld Decl., Ex. C at Art. II, § 1; Art. III, § 8. Additionally, under Toev's by-laws, a director could only resign by giving notice to the board of directors or the president or secretary of Toev. Obstfeld Decl., Ex. C at Art. III, § 9. Given that, at the time of his resignation he was the sole director and believed to be the sole officer of Toev, Schwartz resigned to himself. As such, Schwartz's resignation was a quintessential act of self-dealing and was an act undertaken in furtherance of his and the other defendants scheme to misappropriate Toev's confidential information and form ThermopeutiX as a means to profit from their misappropriation.

Based on the foregoing, Schwartz's purported resignation as the sole director of the board of directors of Toev was ineffective as an act in furtherance of a wrong against Toev and its shareholders. Antagonism is present because, Schwartz, despite his purported resignation, remains the sole director of Toev, with the attendant fiduciary duties, and is accused of the wrongdoing that is the subject of the derivative action. Consequently, defendants' assertion that there is no antagonism between Toev and plaintiffs because Toev is unable to act is without merit.

Moreover, the cases cited by defendants in support of their claim that antagonism is lacking are distinguishable from the facts of this case. In *Netwolves Corp. v. Sullivan and Kartub v. Optical Fashions*, the Court found lack of antagonism due to deadlock on the board of directors or amongst stockholders. *See Netwolves Corp. v. Sullivan*, 2001 WL 492463 (S.D.N.Y. 2001) (finding lack of antagonism due to deadlock on the board of directors); *Kartub v. Optical Fashions*, 158 F.Supp. 757, 758 (S.D.N.Y. 1958) (finding lack of antagonism where one director died and the remaining two resigned and the dissolution of the corporation was sought on the ground of a deadlock among stockholders). There are no allegations of deadlock in this action. Schwartz unilaterally established himself as the sole director of Toev. Am Cmpl. ¶ 31.

Antagonism was found lacking in *Lewis v. Odell and Taylor v. Swirnow*, because the corporation was being managed by bankruptcy trustees and the Court found that none of those trustees would be harmed by judgment for plaintiff or had any reason to oppose the suit. *Lewis*, 503 F.2d at 447; *Taylor v. Swirnow*, 80 F.R.D. 79, 84 (D.Md. 1978)(finding lack of antagonism on the grounds that the plaintiffs controlled the majority of the corporation's stock and that the corporation was under the control of a bankruptcy trustee). Those cases are inapplicable because Toev has not filed for bankruptcy.

In *Liddy v. Urbanek*, no antagonism was found due to the fact that plaintiff owned at least 50% of stock in the corporation and controlled the corporation. *See* Liddy, 707 F.2d at 1225. The holding in *Liddy* is inapplicable to this case because Obstfeld is a minority shareholder of Toev and the controlling officer of Toev -- Schwartz -- is a defendant in the action, not the plaintiff.

Based on the foregoing, the Amended Complaint contains allegations sufficient to compel a finding of antagonism warranting the alignment of Toev as a defendant. Accordingly, the parties are completely diverse and this Court may exercise subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1).

B.    The Court May Exercise Subject Matter Jurisdiction Over This Action
Because Plaintiffs' Right to Relief Depends on the Resolution of a Substantial
<u>Question of Patent Law</u>

The allegations in the Amended Complaint establish that Toev's right to relief necessarily depends on the resolution of a substantial question of federal patent law.  Consequently, the Court may exercise subject matter jurisdiction over this matter under 28 U.S.C. §1338(a) and defendants' motion to dismiss for lack of subject matter jurisdiction should be denied.

It is well-settled that jurisdiction under the Patent law extends only to "those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09 (1988).

However "[m]erely because a claim makes no reference to federal patent law does not necessarily mean the claim does not 'arise under' patent law."  *Christianson*, 486 U.S. at 809 n. 3.  "Indeed, just as a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint, so a plaintiff may not defeat §1338(a) jurisdiction by omitting to plead necessary federal patent-law questions."  *Highland Supply Company v. Klerk's Flexible Packaging, B.V.*, 2005 WL 3534211 *2 (S.D. Ill. 2005) (internal quotations omitted) *quoting Christianson,* 486 U.S. at 809 n. 3; *see also Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13 (1983) (stating similar principle in the context of §1331).  "Importantly, though federal jurisdiction is certainly appropriate if a complaint explicitly pleads federal patent claims, the apparent absence of such claims does not necessarily foreclose federal jurisdiction."  *Id.* at 2005 WL 3534211 * 2.

The allegations in the Amended Complaint fully support the Court's exercise of jurisdiction over this matter under 28 U.S.C. § 1338(a).  Plaintiffs allege that, in exchange for $50,000 loaned by Obstfeld and 1000 shares of Toev stock, Toev purchased an exclusive license to the Columbia Patents, which provides, in part:

2. <u>License Grant</u>

(a) Columbia grants to the Corporation, upon and subject to all the terms and conditions of this Agreement:

(i) an exclusive license throughout the Territory under the Patents to develop, manufacture, use, sell, have sold, rent, or lease Products or Products Supplemental in the Field and the Field Supplemental;

(ii) an exclusive license throughout the Territory to use information to develop, manufacture, use, sell, have sold, rent, or lease Products or Products Supplemental in the Field or the Field Supplemental where such information is not in the public domain.

*See* Obstfeld Decl. Ex. A, p. 2.

Critically, plaintiffs allege that Solar and Lieber have submitted an application, which has been assigned to ThermopeutiX, for a patent concerning aspects of the "Brain Cooling Method and other *proprietary* medical technologies that had been misappropriated from Toev by Schwartz, Solar, Lieber, and Renaissance." Am. Cmpl. ¶ 51 (emphasis added); Obstfeld Decl., Ex. D. Significantly, the ThermopeutiX patent application appears to incorporate elements of the Brain Cooling Method developed by Schwartz that is protected by the exclusive license that Toev purchased from Columbia. Obstfeld Decl., Ex. A; Ex. D.

The determination of whether defendants are liable for breach of contract, conversion, breach of fiduciary duty, or misappropriation of trade secrets, necessarily depends on a determination of whether the ThermopeutiX patent application, upon maturation into a patent, would, in whole or in part, infringe upon the exclusive license to the Columbia Patents held by Toev. In other words, plaintiffs' claims necessarily rely on an interpretation of the Columbia Patents and the ThermopeutiX patent application and a determination of whether the invention that is the subject of the ThermopeutiX patent application would infringe on the Columbia Patents, of which Toev is the exclusive licensee.

As an exclusive licensee, Toev is entitled to bring an action for patent infringement and enforce the Columbia Patents. Generally, "only a patentee may bring an action for patent infringement." *Textile Productions, Inc. v Mead Corporation*, 134 F.3d 1481, 1483 (Fed. Cir. 1998). However, "an exclusive licensee of a patent may sue for infringement of the patent." *Research Frontiers Incorporated v. Marks Polarized Corporation*, 290 F. Supp. 725, 727 (E.D.N.Y. 1968). "A grant of all substantial rights

in a patent amounts to an assignment -- that is, a transfer of title in the patent -- which confers

constitutional standing on the assignee to sue another for patent infringement in its own name."

*Intellectual Property Development, Inc. v. TCI Cablevision of California*, 248 F.3d 1333, 1345 (Fed. Cir.

2001); *see Textile Productions*, 134 F.3d at 1483-4 (a licensee who holds all substantial rights may bring

suit as a patentee).

        In *U.S. Valves, Inc. v. Dray*, the Federal Circuit confronted the issue of whether a

complaint invoked §1338(a) jurisdiction due to the presence of necessary patent law questions.  *See U.S.*

*Valves, Inc. v. Dray*, 212 F.3d 1368 (Fed Cir. 2000).  In that case, plaintiff and defendant had entered into

a exclusive licensing agreement under which plaintiff was to "manufacture, use, sell, advertise, and

distribute" a product for which defendant held patents.  *U.S. Valves*, 121 F.3d at 1370.  After the parties

entered into the agreement, defendant began selling both the product in question and another similar

product.  *Id.*  The defendant sued in state court alleging breach of the licensing agreement and the

defendant removed.  *Id.*  Ultimately, it was determined that:

> The license agreement between [defendant] and [plaintiff] gives
> [plaintiff] "an exclusive right to manufacture, use, sell, advertise,
> and distribute the Licensed Product."  To show that [defendant]
> sold valves in contravention of [plaintiff's] exclusive rights to
> such sales, [plaintiff] must show that [defendant] sold valves that
> were covered by the licensed patents.  Since some of the valves
> [defendant] sold were of the sliding ring variety, a court must
> interpret the patents and then determine whether the sliding ring
> valve infringes these patents.  Thus patent law is a necessary
> element of [plaintiff's] breach of contract action.

*Id.* at 1372.

        Here, to determine whether proprietary information was misappropriated from Toev for

the benefit of ThermopeutiX, a court must interpret the Columbia Patents, to which Toev holds an

exclusive license, and ThermopeutiX's patent application to determine whether the device contemplated

by ThermopeutiX's patent application would infringe on the Columbia Patents.  Accordingly, like in *U.S.*

*Valves*, federal jurisdiction is proper under 28 U.S.C. § 1338(a).  *See Highland Supply*, 2005 WL

3534211 at *3 - 4 (holding that a breach of contract claim arising out of a licensing agreement contained patent law issues conferring federal jurisdiction under 28 U.S.C. §1338(a)).

       The cases cited by defendants in support of their motion to dismiss the complaint due to the absence of federally cognizable patent claims are distinguishable and inapplicable to the facts of this case. *See* Def. Mem. of Law, pp. 11 - 12. Unlike in this case, the determination of whether a patent would be infringed was not essential to the claims asserted in the cases cited by defendants in support of their motion.

       In *Uroplasty, Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277 (Fed. Cir. 2001) and *AT & T Co. v. Integrated Network Corp.*, 972 F.2d 1321 (Fed Cir. 1992), there were no facts alleged demonstrating that a question arising under the patent laws was raised by plaintiff's state law claims. Defendants suggest that federal jurisdiction under 28 U.S.C 1338(a) was denied in those cases was because only state law claims were asserted in the complaints in those action. Def. Mem. of Law, pp. 11 - 12. However, that is simply not the law. Unlike in this case, plaintiffs' right to relief in those cases did not depend on the resolution of a substantial question of patent law. Based on the foregoing and under the Second Circuit's decision in *U.S. Valves*, this Court has subject matter jurisdiction over this action under 28 U.S.C. §1338(a). Consequently, defendants' motion to dismiss should be denied.

## II.

## THE AMENDED COMPLAINT COMPLIES WITH RULE 23.1

       The Amended Complaint's allegation of demand futility is sufficient to comply with the pleading requirements of Federal Rule of Civil Procedure 23.1. The Amended Complaint alleges that Schwartz, the sole member of the board of directors of Toev, purportedly resigned shortly after a corporate filing for ThermopeutiX was made. Am. Cmpl. ¶¶ 42 - 45.

       As stated above, where, as here, a resignation used to perpetrate a wrong is futile and is to be disregarded. *See* Point I, *supra* pp. 6 - 7. Given that Schwartz is both the sole member of Toev's board of directors and is alleged to have specifically partaken in acts in breach of his fiduciary duty as an

officer and sole director of Toev, any demand made to Toev's board of directors -- Schwartz himself -- to institute a lawsuit on behalf of Toev would have been futile.

"Because directors are empowered to manage, or direct the management of, the business and affairs of the corporation . . . the right of a stockholder to prosecute a derivative suit it limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making such an impartial decision regarding such litigation." *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). "Pre-suit demand requirements, and the futility exceptions thereto, are governed by the law of the state of incorporation." *In re Veeco Instruments, Inc.*, 434 F.Supp.2d 267, 773 (S.D.N.Y. 2006). Toev is a Delaware corporation. Am. Cmpl. ¶ 6. Consequently, Delaware law concerning demand futility is controlling.

Under the decision of the Supreme Court of Delaware in *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), demand on the board of directors is excused as futile if a derivative complaint pleads particularized facts creating reasonable doubt that "(1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis*, 473 A.2d 805, 813 (Del. 1984), *rev'd on other grounds*. However, the elements set forth in *Aronson* do not apply where a decision of the board of directors is not being challenged in the derivative suit. *See Rales*, 634 A.2d at 933-4.

In *Rales v. Blasband*, the Supreme Court of Delaware held that "a court should not apply the *Aronson* test for demand futility where the board that would be considering the demand did not make a business decision which is being challenged in the derivative suit." *Rales*, 634 A.2d at 934. Where no business decision or transaction is being challenged, the court "must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Id.* "If the derivative plaintiff satisfies this burden, then demand will be excused a futile." *Id.*

13

Given that the Amended Complaint alleges massive breaches of fiduciary duty that are unrelated to a business decision or transaction, the test set forth in *Rales* applies. Moreover, it cannot be reasonably denied that the *Rales* test is satisfied by the allegations in the Amended Complaint that Schwartz, the sole member of Toev's board of directors, and other officers, agents, and employees of Toev were engaged in a wholesale breaches of fiduciary duty for the purpose of misappropriating the Brain Cooling Method and other related medical technologies from Toev for personal profit. Am. Cmpl. ¶¶ 41 - 52.

Based on those allegations, there can be no question that a reasonable doubt is raised in the Amended Complaint concerning whether Toev's single-member board of directors, comprised of Schwartz himself, could have properly exercised its independent and disinterested business judgment in responding to a demand to bring this lawsuit. It is plainly discernable from the allegations in the Amended Complaint that demand should be excused as futile because it is alleged that the single member of Toev's board of directors, Schwartz, fully participated in, had a financial interest in, and could be found personally liable for the conduct that plaintiffs seek to challenge by this derivative action. *See Rales*, 634 A.2d at 937 (holding that demand on a board of directors was excused as futile based on allegations in an amended complaint raising a reasonable doubt of directors independence due to financial interest in the challenged conduct); *In re Veeco Instruments, Inc.*, 434 F.Supp.2d at 279 (holding that demand would have been futile where allegations in complaint potentially subjected a committee of a board of directors to liability).

Schwartz's establishment of himself as the sole member of Toev's board of directors and Toev's by-laws eliminate the possibility of there being anyone but Schwartz upon whom Obstfeld could have made a demand to pursue the derivative claims asserted in this action. Toev's by-laws require any vacancy on the board to be filled by the remaining directors. Obstfeld Decl., Ex. C at Art. III, § 8. Schwartz was the only director and he never made any attempt to fill the purported vacancy left on the board of directors by his ineffective purported resignation. Am. Cmpl. ¶ 45. Accordingly, defendants' motion to dismiss the complaint based on the alleged violation Fed. R. Civ. P. 23.1 should be denied.

### III.

### GLEN LIEBER IS SUBJECT TO PERSONAL JURISDICTION IN NEW YORK

The Court may exercise personal jurisdiction over Leiber, based on Lieber's admitted transaction of business in New York and the broad forum selection clause contained in the Stock Purchase Agreement.  Whether a non-resident defendant is subject to personal jurisdiction in New York is determined under the law of the forum state.  *See* Fed. R. Civ. P. 4(k)(1).  "On a motion to dismiss for lack of personal jurisdiction, plaintiffs bear the burden of establishing a *prima facie* case that a non-resident defendant is amenable to personal jurisdiction in New York."  *A.I. Trade Finc., Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir. 1993).  Moreover, the Court must view the jurisdictional allegations in a light most favorable to plaintiffs.  *See Ed Moore Adv. Agency, Inc. v. I.H.R., Inc.*, 114 A.D.2d 484, 486 (2d Dept. 1985).

Lieber is subject to personal jurisdiction in New York pursuant to New York's long-arm statute, CPLR 302.  CPLR 302(a)(1) provides that a New York Court may exercise personal jurisdiction over a non-domiciliary who, in person or through an agent, "transacts any business within the state or contracts anywhere to supply goods or services in the state"  CPLR 302(a)(1).

"A nondomiciliary transacts business under CPLR §302(a)(1) when he purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws."  *Grand River Enterprises Six Nations v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) (internal quotations and punctuation omitted).  Significantly, CPLR 302(a)(1) is a "'single act' statue and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted."  *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988).  "In order for a cause of action to arise out of a party's activities in New York, there must be an articulable nexus, or substantial relationship, between the claim asserted and the actions that occurred in New York."  *Kronisch v. U.S.,* 150 F.3d 112, 130 (2d Cir. 1998).

In his declaration, Lieber admits that he is an officer and minority shareholder of ThermopeutiX and that in June 2003, he traveled to New York for a meeting concerning Toev. Declaration of Glen Lieber in Support of Motion to Dismiss for Lack of Personal Jurisdiction ("Lieber Decl.") ¶ 5.  Lieber admits that his co-defendants Schwartz and Ronald Solar ("Solar") and, importantly, individuals from plaintiff Ignition Ventures, Inc. ("Ignition") attended the meeting.  *Id.*  Significantly, the purpose of the meeting was for Ignition and Schwartz to appoint Solar and Lieber to senior management positions at Toev.  Declaration of Amy Salzhauer in Opposition to Motion to Dismiss for Lack of Personal Jurisdiction ("Salzhauer Decl."), ¶¶ 4 - 6.  Moreover, subsequent to his appointment to the management of Toev, Lieber engaged in telephone conversations with Ignition personnel at Ignition's New York office concerning the progress Ignition was making raising capital for Toev pursuant to Ignition's contract with Toev.  *Id.*, ¶ 8.

By attending the June 2003 meeting in New York for the purpose of being appointed to the senior management of Toev and by engaging in telephone conversations with Ignition personnel in New York concerning raising capital for Toev, Lieber purposefully availed himself of the privilege of conducting activities in New York.  Accordingly, Lieber's New York activities are sufficient to qualify as a transaction of business in New York under CPLR 302(a)(1).  Moreover, Ignition's claim that Lieber, along with co-defendants and meeting participants Schwartz and Solar, tortiously interfered with the contract between it and Toev constitutes an articulable nexus and substantial relationship between Lieber's transaction of business in New York and the claim being asserted against him.  Am. Cmpl. ¶¶ 64 - 67; Salzhauer Decl., Ex. A.  Consequently, this Court may exercise of personal jurisdiction over Lieber under CPLR 302(a)(1).

Moreover, defendants have not contested this Court's jurisdiction over ThermopeutiX. Derivative claims have been asserted in this action against ThermopeutiX on behalf of Toev.  Lieber served as an officer of both companies.  Am. Cmpl. ¶ 30; Lieber Decl., ¶ 2.  Accordingly, Lieber is an important witness and will likely have to come to New York and will not be prejudiced by the exercise of personal jurisdiction over him.  *See Kreutter*, 71 N.Y. 2d at 472 (holding that having jurisdiction over the

company of which defendant was an officer made the inconvenience imposed by assertion of personal jurisdiction over the officer minimal).

Given that he was an officer of Toev, Lieber is also subject to personal jurisdiction in New York based upon the broad forum selection clause contained in the Stock Purchase Agreement. Obstfeld Decl., Ex. B at ¶ 11.12. Although, Lieber was not a signatory to the Stock Purchase Agreement, a non-party may be bound to a forum selection clause if the party is "'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Nanopierce Technologies, Inc. v. Southridge Capital Management LLC*, 2003 WL 22882137, *5 (S.D.N.Y. 2003). In discerning whether parties are "closely related," the U.S. Court of Appeals for the Second Circuit has looked to whether the non-signatory [is an] intended beneficiar[y] entitled to enforce the clause in question." *Direct Mail Production Svcs. Ltd. v. MBNA Corp.*, 2000 WL 1277597 * 3 (S.D.N.Y. 2000) *quoting Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1358 (2d Cir. 1993).

As an officer of Toev, Lieber was entitled to enforce the forum selection clause in the Stock Purchase Agreement and plaintiffs seek to hold Lieber liable for the breach of the Stock Purchase Agreement both in his individual capacity and in his capacity as an officer of Toev. Am. Cmpl. ¶¶ 81 - 84. Consequently, Lieber is closely related to the dispute such that it was foreseeable that he would be bound by the forum selection clause in the Stock Purchase Agreement. Consequently, the forum selection clause provides an alternative basis for the Court's exercise of personal jurisdiction over Lieber. *See Nanopierce*, 2003 WL 22882137 at *5 (holding that the exercise of personal jurisdiction over a chief financial officer was proper under a forum selection clause contained in an agreement to which the corporation was a party).

Lieber argues that, even if he may be subject to personal jurisdiction under CPLR 302(a)(1), requiring him to litigate would violate due process. That argument has been found to be difficult to make successfully because CPLR 302(a)(1) "does not extend New York's long-arm jurisdiction to the full extent permitted by the Constitution." *Levisohn, Lerner, Berger & Langsam v. Medical Taping Sys., Inc.*, 10 F.Supp.2d 334, 339 (S.D.N.Y. 1998). Consequently "satisfaction of the

section 302(a)(1) criteria will generally meet federal due-process requirements." *Kelly v. MD Buyline, Inc.*, 2 F.Supp.2d 420, 431 (S.D.N.Y. 1998). "So long as a party avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there, due process is not offended if that party is subjected to jurisdiction." *Kreutter*, 71 N.Y.2d at 466.

Lieber availed himself of the benefits of the forum by attending a meeting in New York at which he was appointed the president of Toev and by engaging in telephone conversations with Ignition personnel at its New York office concerning Toev. Salzhauer Decl., ¶¶ 4 - 6, 8. Consequently, he has sufficient minimum contacts with New York and should reasonably expect to defend his actions here. Therefore, the exercise of personal jurisdiction over Lieber under CPLR 302(a)(1) does not violate due process. Defendant's motion to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction should be denied.

**IV**.

**THE SECOND AND FIFTH CAUSES OF ACTION IN THE AMENDED COMPLAINT ARE NOT SUBJECT TO DISMISSAL**

A.    The Second Cause of Action States a Claim for Breach of Fiduciary Duty

Defendants' claim that the second cause of action in the Amended Complaint fails to state a claim upon which relief can be granted is completely without merit. The second cause of action alleges that, due to Schwartz, Solar, Lieber, and Renaissance's breaches of fiduciary duty, Toev has not made repayment of the Obstfeld Loan. Am. Cmpl. ¶¶ 61- 63. As a shareholder of Toev, Obstfeld is owed a fiduciary duty by Schwartz, Solar, Lieber, and Renaissance, who are alleged to be officers, directors and/or agents of the management Toev. Am. Cmpl. ¶ 55.

"Fiduciary duties are owed by the directors and officers to the corporation and its stockholders. *Arnold v. Society for Savings Bancorp, Inc.*, 678 A.2d 533, 540 (Del. 1996). Consequently, the second cause of action states a claim because the subject defendants may be held liable for breaching fiduciary duties owed to Toev and Obstfeld in connection with their involvement in Toev's failure to make payment of the Obstfeld Loan.

B.     The Fifth Cause Of Action States A Claim For Conversion

Defendants' assertion that plaintiffs' conversion claim is not cognizable under New York law is simply incorrect.  The general rule under New York law is that "a claim for conversion does not lie for the withholding of indefinite, intangible, and incorporeal species of property." *Matzan v. Eastman Kodak Co.*, 134 A.D.2d 863, 864 (4th Dept. 1987).  "However, New York has extended the tort of conversion to intangible property rights that are 'merged in or identified with, some document' or 'relate to specifically identifiable money.'" *Phansalkar v. Andersen Weinroth & Co. L.P.*, 175 F.Supp.2d 635, 639 (S.D.N.Y. 2001).  "Although an idea alone cannot be converted, the 'tangible expression or implementation of that idea' can be." *Astroworks v. Astroexhibit, Inc.*, 257 F.Supp.2d 609, 618 (S.D.N.Y. 2003) *quoting Matzan*, 134 A.D.2d at 864.

Plaintiffs claim that defendants converted the Brain Cooling Method and other proprietary information belonging to Toev.  Am. Cmpl ¶ 78.  Among the proprietary information identified in the Amended Complaint that is the subject of plaintiffs' conversion claim is Toev's exclusive license to the Columbia Patents.  Am. Cmpl. ¶¶ 20-21; Obstfeld Decl., Ex. A.  Given that the Columbia Patents are tangible expressions of an idea, they are properly the subject of a conversion claim.  Accordingly, defendants' motion to dismiss the conversion claim in the Amended Complaint should be denied.

**V.**

**DEFENDANTS' MOTION BASED ON THE STATUTE OF LIMITATIONS
IS WITHOUT MERIT**

None of the claims asserted in the Amended Complaint are barred by the statute of limitations.  Significantly, defendants are estopped from even relying on the statute of limitations under the doctrine of equitable estoppel.  Moreover, even if the doctrine of equitable estoppel is for some reason inapplicable, none of plaintiffs' claims are time barred.

A.    Defendants Are Estopped From Asserting the Statute of Limitations as a
Defense Under the Doctrine of Equitable Estoppel

Defendants are estopped from asserting the statute of limitations as a defense to plaintiffs' claims under the doctrine of equitable estoppel.  "A defendant may be estopped from pleading the Statute of Limitations where a plaintiff was induced by fraud, misrepresentation, or deception to refrain from timely commencing an action."  *Gleason v. Spota*, 194 A.D.2d 764, 764 (2d Dept. 1993).  However, "[w]here concealment without actual misrepresentation is claimed to have prevented a plaintiff from commencing a timely action, the plaintiff must demonstrate a fiduciary relationship . . . which gave the defendant an obligation to inform him or her of facts underlying the claim." *Id.*

In *Norwalk v. J.P. Morgan Co., Incorporated*, the Appellate Division, Second Department reversed a dismissal of a complaint as time-barred on the ground that plaintiffs demonstrated the existence of a fiduciary relationship and concealment sufficient to support an equitable estoppel claim.  *See Norwalk v. J.P. Morgan Co., Incorporated*, 268 A.D.2d 413, 415 (2d Dept. 2000).

Here, there can be no question that Schwartz, who was the sole director of Toev, and Solar and Lieber, who were officers of Toev, owed fiduciary duties to Toev and its shareholders.  "Fiduciary duties are owed by the directors and officers to the corporation and its stockholders.  *Arnold*, 678 A.2d at 540 (Del. 1996). Importantly, that fiduciary duty includes a duty of disclosure.  "The duty of disclosure is, and always has been, a specific application of the general fiduciary duty owed by directors." *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998).

In support of their motion to dismiss on statute of limitations grounds, defendants allege that a three-year statute of limitations has expired on certain of plaintiffs' claims based on the fact that ThermopeutiX was formed in May 27, 2004 and the alleged breaches of fiduciary duties by Schwartz, Solar, and Lieber occurred prior to May 27, 2004, but plaintiffs' complaint was filed more than three years after that date.  *See* Def. Memo. of Law,  p. 20.

Plaintiffs allege in the Amended Complaint that neither Schwartz,  nor any of the other defendants who served as officers of Toev, disclosed to the shareholders that they were involved in the

formation of ThermopeutiX for the purpose of developing and commercializing the same medical technologies that Toev was formed to develop and commercialize.  Am. Cmpl. ¶ 40.  Obstfeld only discovered the individual defendants' involvement with ThermopeutiX by virtue of the SurModics press release, not by any disclosure by any of the defendants in accordance with their fiduciary duties.  Am. Cmpl. ¶¶ 47, 50.

Based on the foregoing, the allegations in the Amended Complaint meet the standard for the application of equitable estoppel against defendants.  Plaintiffs allege both a fiduciary relationship between Obstfeld and the subject defendants and that the subject defendants concealed their involvement in the formation of ThermopeutiX when they had an obligation to make disclosure of such involvement to the shareholders.  Accordingly, defendants should be equitably estopped from asserting the statute of limitations as a defense.

B.     A Six-Year Statute of Limitations Applies to Plaintiffs' Second Cause of Action

Defendants' claim that a three-year statute of limitations is applicable to plaintiffs' second cause of action for breach of fiduciary duty is contrary to the controlling law.  Where, as here, a corporation sues a present or former officer, director, or shareholder for breach of fiduciary duty, CPLR §213(7) governs.  CPLR §213(7) provides that "an action by or on behalf of a corporation against a present or former, director, officer, or stockholder for an accounting, or to procure judgment on the ground of fraud, or to enforce a liability, penalty or forfeiture, or to recover waste for an injury to property or accounting therewith" shall be "commenced within six years."  CPLR §213(7).  Accordingly, even if the second cause of action accrued on May 27, 2004 as defendants assert, this action was commenced within the time allowed under the applicable six-year statute of limitations.

However, it is plaintiffs' position that their cause of action for breach of fiduciary duty accrued on either June 20, 2004 when Schwartz purportedly resigned as the sole member of the Toev board of directors or January 25, 2005, when Lieber and Solar submitted the application for the patent

that was assigned to ThermopeutiX.  *See* Am. Cmpl. ¶ 43; Obstfeld Decl., Ex. D.  Based on those two

dates, plaintiffs' claims are timely even under a three-year statute of limitations.

Moreover, since the complaint is primarily equitable in nature, and plaintiffs seek both

equitable and monetary relief in the second cause of action, the six-year statute of limitations for a breach

of fiduciary duty claim applies instead of a three-year statute of limitations.  *See Spitzer v. Schussel*, 7

Misc. 3d 171, 173-4 (Sup. Ct., New York Co., 2005) (holding that where a complaint is primarily

equitable in nature but also seeks monetary relief with respect to a breach of fiduciary duty, the six-year

statute of limitations for breach of fiduciary duty applies).  Accordingly, defendants' motion to dismiss

the second cause of action should be denied.

C.    Plaintiffs' Fourth Cause of Action is Not Time-Barred

Defendants' motion to dismiss the fourth cause of action in the Amended Complaint is

frivolous.  In an attempt to support their legally deficient argument that the fourth cause of action for

tortious interference with business relations is barred by the statute of limitations, defendants leave out the

crucial last clause of a quote from a decision cited in support of their motion.

Defendants quote *Rosemeier v. Schenker, Int'l* in support of the proposition that a cause

of action for tortuous interference accrues "at the time the injury is sustained."  *Rosemeier v. Schenker*

*Int'l*, 895 F.Supp 65, 66. (S.D.N.Y. 1995); Def. Mem. of Law,  p. 21.  The quotation from *Rosemeier*

relied upon by defendants in support of their motion to dismiss the fourth cause of action is materially

truncated and taken out of context in defendants' moving brief.  *Id.*  The full quote from *Rosemeier* is

critical to the determination of the accrual of a claim for tortious interference.  In *Rosemeier*, the Court

held that under New York law, "a cause of action for tortious interference accrues at the time the injury is

sustained, *rather than the date of defendant's alleged wrongful act or the date of discovery of the injury*

*by the plaintiff*."  *Id.* (emphasis supplied).   The last clause was omitted from defendants' moving brief.

Def. Mem. of Law, p. 21.

Defendants seek to turn Rosemeier on its head and set the accrual date of plaintiffs'

tortious interference claim on the date of defendants' wrongful act, *instead of the time that the injury was*

22

*sustained*. Def. Mem. of Law, p. 21.  Although a three-year statute of limitations does apply, the date of Solar's refusal to allow Toev to consider offer of investment simply is not the event on which the accrual of a cause of action for tortious interference may be based.  Ignition's injury occurred when its relations and reputation with prospective investors were harmed as the result of Solar's action, not the date of Solar's wrongful act.  Such injury necessarily occurred in or about July 2004 when Ignition's reputation was damaged as the result of Solar's abrupt refusal to allow Toev to consider offers of investment sourced by Ignition.  Salzhauer Decl., ¶ 9.  This action was commenced within three years of the date that Ignition sustained an injury as the result of Solar's conduct.  Consequently, defendants' motion to dismiss the fourth cause of action should be denied.

        D.      The Fifth and Seventh Causes of Action in the Amended Complaint are not <u>Time-Barred</u>

        The fifth cause and seventh causes of action in the Amended Complaint, which are for conversion and misappropriation of trade secrets, respectively, are not barred under New York's statute of limitations.  "For Statute of Limitations purposes, an action for conversion . . . [is] subject to a three-year limitation period." *Vigilant Ins. Co. of America v. Housing Authority of the City of El Paso, Texas*, 87 N.Y.2d 36, 44 (1995); *see* CPLR 214(3).  Likewise, "New York trade secret misappropriation claims are governed by the three-year statute of limitations for suits based on injury to property." *Architectronics, Inc. v. Control Systems, Inc.*, 935 F.Supp. 425, 433 (S.D.N.Y. 1996); *see* CPLR 214(4).  However a cause of action does not accrue until "all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court." *Motor Vehicle Accident Indemnification Corp. v. Aetna Casualty & Surety Co.*, 89 N.Y.2d 214, 221 (1996).

        "The tort of conversion is established when one who owns and has a right to possession of personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner." *Republic of Haiti v. Duvalier*, 211 A.D.2d 379, 384 (1st Dept. 1995). Accordingly, a cause of action for conversion in New York does not accrue until the defendant takes

action which "exclude[s] the owner from exercising her rights over the [property]." *Thyroff v. Nationwide Mutual Ins. Co.*, 460 F.3d 400, 404 (2d Cir. 2006).

A claim for misappropriation of trade secrets accrues in New York upon disclosure "[i]f a defendant misappropriates and discloses a trade secret." *Architectronics, Inc.*, 935 F.Supp at 433. However, "if the defendant keeps the secret confidential yet makes use of it to his own commercial advantage, each successive use constitutes a new actionable tort for purposes of the Statute of Limitations." *Id.*

The act giving rise to the accrual of plaintiffs' claims for conversion and misappropriation of trade secrets is Lieber and Solar's filing of a patent application for the Brain Cooling Method and other related medical technologies. Am. Cmpl. ¶¶ 51, 77 - 80, 85 - 88; Obstfeld Decl., Ex. D. The filing of the patent application constitutes the act excluding Toev from exercising its rights with respect to the Brain Cooling Method, which gives rise to a claim for conversion. The filing of the patent application also constitutes disclosure giving rise to a claim for misappropriation of a trade secret. The patent application was filed on January 25, 2005. Obstfeld Decl., Ex. D. Accordingly, plaintiffs had three years from that accrual date -- or until January 25, 2008 -- to assert their claims for conversion and misappropriation of trade secrets. Given that this action was commenced well within the time allowed after accrual of the claims, defendants' motion to dismiss the fifth and seventh causes of action should be denied.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court deny defendants'

motion to dismiss the Amended Complaint its entirety.


Dated:  Freeport, New York
        September 28, 2007


                        **LAW OFFICE OF MARC M. ISAAC PLLC**


                        By:_____/s/ Marc M. Isaac_____
                                Marc M. Isaac (MI-1873)
                                210 Moore Avenue
                                Freeport, New York 11520
                                (516) 750-1422

                                *Attorney for Plaintiffs*