UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

LAWRENCE OBSTFELD, )
individually and derivatively )
on behalf of TOEV MEDICAL ) Civ. No. 07-5847 (DAB)
CORPORATION, and )
IGNITION VENTURES, INC., )
 )
Plaintiffs, )
 )
v. )
 )
ARTHUR SCHWARTZ, )
RONALD SOLAR, )
RENAISSANCE BIOMEDICAL, INC., )
GLEN LIEBER, and )
THERMOPEUTIX, INC., )
 )
Defendants. )
_____)

_____

**REPLY BRIEF IN SUPPORT OF DEFENDANTS
RONALD SOLAR, RENAISSANCE BIOMEDICAL, INC.,
GLEN LIEBER, AND THERMOPEUTIX, INC.'S MOTION TO DISMISS**
_____

96918.1

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 1

    I.    PLAINTIFFS CANNOT ESTABLISH SUBJECT MATTER JURISDICTION. ........................................................................... 1

        A.    The Parties Are Not Completely Diverse .......................................... 1

        B.    None of Plaintiffs' Claims Arise Under the Patent Laws ................................................................................................ 3

    II.    PLAINTIFFS' RESPONSE CONFIRMS THEIR VIOLATION OF RULE 23.1. ................................................................................ 6

    III.    THE COURT LACKS PERSONAL JURISDICTION OVER GLEN LIEBER. ........................................................................ 7

    IV.    COUNTS TWO AND FIVE DO NOT STATE ACTIONABLE CLAIMS. ......................................................................... 8

    V.    COUNTS TWO, FOUR, FIVE, AND SEVEN ARE TIME-BARRED. ............................................................................................... 9

CONCLUSION ....................................................................................................................... 10

## TABLE OF AUTHORITIES

### FEDERAL CASES

**Page**

*Air Prod. & Chem., Inc. v. Reichhold Chem., Inc.*, 755 F.2d 1559 (Fed. Cir. 1985) ................3, 4

*Am. Tel. & Tel. Co. v. Integrated Network Corp.*, 972 F.2d 1321 (Fed. Cir. 1992) .......................5

*Astroworks v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609 (S.D.N.Y. 2003)..........................................8

*Bd. of Regents, Univ. of Texas Sys. v. Nippon Tel. & Tel. Corp.*, 414 F.3d 1358 (Fed. Cir. 2005) ............................................................................................................................................5

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989).............................................9

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988).............................................3, 4

*Diduck v. Kaszycki & Sons Contractors, Inc.*, 737 F. Supp. 792 (S.D.N.Y. 1990)........................6

*Duffey v. D.C. Wheeler*, 820 F.2d 1161 (11th Cir. 1987) ................................................................1

*Inventions Corp. v. Hobbs*, 244 F. 430 (2d Cir. 1917) ....................................................................2

*Netwolves Corp. v. Sullivan*, 2001 WL 492463 (S.D.N.Y. 2001) ...................................................1

*Phansalkar v. Andersen Weinroth & Co. L.P.*, 175 F. Supp. 2d 635 (S.D.N.Y. 2001)....................8

*Smachlo v. Birkelo*, 576 F. Supp. 1439 (D. Del. 1983) ...................................................................7

*Smith v. Sperling*, 354 U.S. 91 (1957) .........................................................................................2, 3

*U.S. Valves, Inc. v. Dray*, 212 F.3d 1368 (Fed. Cir. 2000).............................................................4, 5

*Uroplasty, Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277 (Fed. Cir. 2001).............................5

*ZB Holdings, Inc. v. White*, 144 F.R.D. 42 (S.D.N.Y. 1992)..........................................................1

### STATE CASES

*Kruetter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988) ................................................................7

*Frantz Mfg. Co. v. EAC Indus.*, 501 A.2d 401 (Del. 1985) ............................................................2

*Gleason v. Spota*, 194 A.D.2d 764 (2d Dept. 1993) .......................................................................9

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ..................................................................................6

*Weisenthal v. Weisenthal*, 40 A.D.3d 1078, 1079 (2d Dept. 2007) ...............................................11

*Zeltner v. Henry Zeltner Brewing Co.*, 174 N.Y. 247 (1903) ..........................................................2

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(1) ....................................................................................................................5

Fed. R. Civ. P. 12(b)(6) ....................................................................................................................5

Fed. R. Civ. P. 23.1 ..........................................................................................................................7

## STATE STATUTES

Del. Code Ann. Title 8, § 223 (2007) ..............................................................................................6

N.Y.C.P.L.R. § 302(a)(1) .................................................................................................................7

## MISCELLANEOUS

W.M. Fletcher, 2 *Fletcher Cyclopedia of the Law of Private Corporations* § 345 (2003) .............2

Rev. Model Bus. Corp. Act § 8.07(a) (1984) ...................................................................................2

**PRELIMINARY STATEMENT**

Defendants' Rule 12 motion is directed at the legal insufficiency of Plaintiffs' Amended Complaint. In response, Plaintiffs offer two declarations and six exhibits totaling more than 70 pages, but failed to cure their fatal pleading defects. The Court lacks jurisdiction because the Delaware citizens on both sides destroy diversity and none of the claims arise under patent law.

**ARGUMENT**

**I.   PLAINTIFFS CANNOT ESTABLISH SUBJECT MATTER JURISDICTION.**

Plaintiffs implicitly admit (a) diversity jurisdiction cannot be maintained unless Plaintiff Toev is realigned as a Defendant, and (b) patent jurisdiction requires finding the Complaint includes a claim arising under U.S. Patent law. Plaintiffs have not remedied either flaw.

   A.   The Parties Are Not Completely Diverse.

As Plaintiffs acknowledge, and as their own caption reflects, corporations in derivative suits generally are aligned as plaintiffs. *See ZB Holdings, Inc. v. White*, 144 F.R.D. 42, 45 (S.D.N.Y. 1992); Pls.' Mem. at 4 (citing *ZB Holdings*). The only exception depends on showing actual antagonism between the shareholder plaintiff and corporate management. *Id.* Past antagonism is irrelevant to realignment – rather, antagonism is determined based on the relationship of the parties at the time of the litigation.[1] *See, e.g., Duffey v. D.C. Wheeler*, 820 F.2d 1161, 1163 (11th Cir. 1987) (realignment proper only where corporation is "actively antagonistic to the plaintiff's interests"); *Netwolves Corp. v. Sullivan*, 2001 WL 492463, at *6 (S.D.N.Y. 2001) (no antagonism where the corporation "does not, would not, or cannot express opposition to the initiation of the lawsuit"). Thus, Plaintiffs' citation to alleged past misdeeds of Toev's former management (Pls.' Mem. at 5) does not support realignment.

---

[1] Plaintiffs admit that present, not past, antagonism is key, because they pin their claim of antagonism on Dr. Schwartz's supposed continued post-resignation presence on Toev's board. Pls.' Mem. at 6.

Alternatively, Plaintiffs argue that antagonism exists to justify realignment, because they deem Dr. Schwartz to be part of Toev's management *more than three years after his resignation.* Pls.' Mem. at 6-7. Plaintiffs admit in their verified complaint, however, that Dr. Schwartz left Toev years ago. *See* Am. Compl. ¶¶ 10 ("Arthur Schwartz *was* president and chief executive officer of Toev"); 44 ("As a result of Schwartz's purported resignation and abandonment of Toev, *Toev was left without a board of directors*"); 45 ("[Schwartz] made no effort to fill *the vacancy* left by his purported resignation"); 52 ("Schwartz *was* the sole member of the board of directors of Toev") (emphasis added in each quotation). The alignment of the corporation should be determined by Plaintiffs' pleading. *See Smith v. Sperling*, 354 U.S. 91, 97 (1957).

Moreover, Plaintiffs cannot compel Dr. Schwartz to serve Toev in perpetuity. *See* W.M. Fletcher, 2 *Fletcher Cyclopedia of the Law of Private Corporations* § 345 (2003) ("a director or other officer of a corporation may resign at any time and thereby cease to be an officer"). *See also Frantz Mfg. Co. v. EAC Indus.*, 501 A.2d 401, 408 (Del. 1985) (director who resigned after selling shares to individual seeking corporate takeover did not breach fiduciary duty; "directors are . . . free to resign"); Rev. Model Bus. Corp. Act § 8.07(a) (1984) (director may resign at any time by delivering written notice to the corporation).[2]

Plaintiffs also claim that Dr. Schwartz's resignation was somehow forbidden by the August 18, 2003 Notice of Consent of Majority Shareholder (Obstfeld Decl., Ex. C) or by Toev's

---

[2] The hoary case law cited by Plaintiffs (Pls.' Mem. at 6-7) is inapposite and inconsistent with the modern view, reflected in *Frantz*, that individuals cannot be compelled to serve as directors against their will. *Inventions Corp. v. Hobbs*, 244 F. 430, 441-42 (2d Cir. 1917), concerned whether the plaintiff had effected proper service on the defendant corporation by serving the corporation's former director whose last-minute resignation "was merely an obstructive device in fraud" to prevent service upon the corporation. *Zeltner v. Henry Zeltner Brewing Co.*, 174 N.Y. 247, 249 (1903), concerned whether a company's officers could resign en masse for the purpose of triggering the statutory appointment of a receiver. These cases, whose validity is now dubious, fail to support Plaintiffs' position – that a director who resigned three years ago should be compelled to continue serving as a director and considered "current management" for purposes of aligning the parties in a derivative action.

bylaws (Obstfeld Decl., Ex. E).  The documents themselves belie Plaintiffs' claim.  In the Notice of Consent, Dr. Schwartz agreed "to hold office, *subject to the terms and conditions of the Corporation's by-laws*, until the next annual meeting of shareholders or until his successor or successors are elected and qualify."  Obstfeld Decl., Ex. C (emphasis added).  Toev's bylaws give its directors and officers the unqualified right to resign.  *See* Obstfeld Decl., Ex. E, Art. III, Sec. 9; Art. IV, Sec. 2.  As Plaintiffs admit in the Amended Complaint (¶¶ 43, 46), Dr. Schwartz provided written notice of his resignation in June 2004, not only to Toev, but to Toev shareholder Columbia University.  Nothing in Toev's bylaws empowers a shareholder to force a director to stay in office beyond his resignation.  Because Dr. Schwartz had the right to resign, and did resign in 2004, no active antagonism justifies realigning Toev as a defendant.

Finally, whether antagonism is present, and realignment proper, "is a practical not a mechanical determination and is resolved by the pleadings and the nature of the dispute."  *Smith v. Sperling*, 354 U.S. 91, 97 (1957).  Since resigning, Dr. Schwartz has not acted as an officer or director of Toev.  To the contrary, Plaintiffs complain Dr. Schwartz "abandon[ed] Toev," and failed "to fill the vacancy left by his purported resignation."  Am. Compl. ¶¶ 44-45.  Under these circumstances, there is no active antagonism, the realignment exception does not apply, and the absence of complete diversity compels dismissal for lack of subject matter jurisdiction.

B. None of Plaintiffs' Claims Arise Under the Patent Laws.

Plaintiffs' attachment of the Columbia license agreement and ThermopeutiX's patent application to Mr. Obstfeld's Declaration does not transform the Amended Complaint into one arising under U.S. patent laws.  *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988) (section 1338(a) jurisdiction triggered only when federal patent law creates the cause of action or the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law); *see also Air Prod. & Chem., Inc. v. Reichhold Chem., Inc.*, 755

F.2d 1559, 1562 (Fed. Cir. 1985) (in determining whether a claim arises under the patent laws, a "court must review and analyze the plaintiff's pleadings, with special attention directed to the relief requested by the plaintiff"). None of Plaintiffs' claims for relief "necessarily depends on resolution of a substantial question of federal patent law." *Christianson*, 486 U.S. at 809.

Plaintiffs' reliance on *U.S. Valves, Inc. v. Dray*, 212 F.3d 1368 (Fed. Cir. 2000), proves the point. There, the defendant granted the plaintiff the exclusive right to manufacture products embodying the defendant's patents. *Id*. at 1371. The plaintiff sued, alleging that the defendant broke the promise of exclusivity by selling other products covered by the patents. *Id*. Thus, the critical issue in determining whether the plaintiff could recover for breach of contract was "whether Dray's valves infringed the patents." *Id*. at 1372.

Here, unlike *U.S. Valves*, Plaintiffs have not alleged that the ThermopeutiX patent application (Obstfeld Decl., Ex. D) infringes the Columbia patents, or that Defendants have improperly employed a method covered by the claims of the Columbia patents. Plaintiffs vaguely allege that Defendants "misappropriat[ed] [] *the Brain Cooling Method and other related medical technology* that were the trade secrets and proprietary information of Toev . . . ." Am. Compl. ¶ 55 (emphasis added). The Brain Cooling Method is not, however, co-extensive with the technology disclosed in the Columbia patent. Rather, Plaintiffs define it as "a putative treatment for the approximately 600,000 people per year who suffer strokes, as well as a novel method for cooling the brain so as to mitigate the negative effects of stroke." *Id*. ¶ 14. The "Columbia Patents" referred to in the Amended Complaint cover only "*a limited component* of the Brain Cooling Method." *Id*. ¶ 18 (emphasis added). Thus, unlike *U.S. Valves*, Plaintiffs' claims for relief do not depend on resolution of a substantial question of federal patent law. Accordingly, Plaintiffs fail to meet the standard set forth by the Supreme Court in *Christianson*.

The Federal Circuit recently examined *U.S. Valves* and found no jurisdiction on facts similar to this case. In *Bd. of Regents, Univ. of Texas Sys. v. Nippon Tel. & Tel. Corp.*, 414 F.3d 1358, 1360 (Fed. Cir. 2005), the plaintiff alleged that the defendant had filed a Japanese patent application based on the plaintiff's technology, and that "such use of its confidential and proprietary technology was a misappropriation of [the plaintiff's] intellectual property and constituted a breach of the agreement by which [the defendant] was given access to that proprietary information." At the time the defendant filed the complained-of Japanese patent application, the plaintiff had already obtained a patent covering its invention. Relying on *U.S. Valves*, the defendant sought to invoke federal jurisdiction. The Court disagreed, explaining:

> [*U.S. Valves*] does not stand for the proposition that all breach of contract actions involving patents require [] a determination [that the defendant's actions infringed the patent]. . . . The fact that [the plaintiff] owns a U.S. patent on the invention allegedly misappropriated may be evidence of the claims, but the presence of the patent does not require resolution of a substantial question of U.S. patent law.

*Id*. at 1364-65 (Fed. Cir. 2005). *See also Am. Tel. & Tel. Co. v. Integrated Network Corp.*, 972 F.2d 1321, 1322 (Fed. Cir. 1992) (dismissing for lack of federal jurisdiction employer's breach of fiduciary duty and misappropriation lawsuit against former employees relating to technology patented by new employer; the claims were not limited to patentable inventions so the plaintiff could "rely on one theory with patent connotations, and on another theory involving no patent question"); *Uroplasty, Inc. v. Advanced Uroscience, Inc.*, 239 F.3d 1277 (Fed. Cir. 2001) (discussed at pp. 11-12 of Defendants' initial brief).

In sum, even given the most generous interpretation, the Amended Complaint fails to plead facts establishing either diversity or patent jurisdiction. The Court should grant Defendants' motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## II.     PLAINTIFFS' RESPONSE CONFIRMS THEIR VIOLATION OF RULE 23.1.

Plaintiffs have not satisfied Federal Rule of Civil Procedure 23.1. In a vain attempt to claim demand futility, Plaintiffs reiterate that Dr. Schwartz retains control of Toev's board of directors, rendering any pre-suit demand futile. Pls.' Mem. at 14. As shown above at p. 3, Dr. Schwartz had the right to resign, and did resign in 2004. Thus, Plaintiffs cannot use Dr. Schwartz to establish demand futility under *Rales v. Blasband*, 634 A.2d. 927, 934 (Del. 1993), which requires examination of the board's independence "as of the time the complaint is filed."

Moreover, Mr. Obstfeld admits that he had the support of the majority of those in current control of Toev's affairs – the shareholders. He states that Toev has three other shareholders (Messrs. Gewirtz and Gottesman, and Columbia University), that he discussed bringing these claims with two of them, and that none of them "were opposed to commencement of this action on behalf of Toev." Obstfeld Decl. ¶ 7. Far from establishing futility, Mr. Obstfeld's Declaration confirms his failure to comply with Rule 23.1 and Delaware law. The pre-suit demand requirement is designed to give the corporation "the opportunity to take over a suit which has been brought on the corporation's behalf." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 737 F. Supp. 792, 800 (S.D.N.Y. 1990). Mr. Obstfeld fails entirely to justify bringing this action derivatively rather than directly through the corporation itself.[3]

Instead of making an effort to take control of Toev's affairs after the so-called "abandonment" of Toev by Dr. Schwartz, Mr. Obstfeld waited three years, and then sued on

---

[3] Mr. Obstfeld's claim that Toev's shareholders were hamstrung by Dr. Schwartz's alleged perpetual position on Toev's board misreads Toev's bylaws and ignores Delaware corporate law to give an unfounded *post hoc* rationalization for three years of shareholder inaction. Pls.' Mem. at 14. Toev's bylaws do not foreclose the right of the shareholders to reconstitute the board in the event Toev finds itself without any directors or officers. Plaintiffs' reading of the bylaws – leaving the corporation in permanent limbo in the event the board resigns – is patently absurd. In addition, Delaware law provides a remedy that Toev's shareholders could have exercised more than three years ago. They could have called a special meeting of shareholders to elect new directors, or applied to the court of Chancery for a decree ordering such an election. Del. Code Ann. Title 8, § 223 (2007).

Toev's behalf. In doing so, Mr. Obstfeld violated the letter and spirit of Rule 23.1 and related state corporate law. The shareholder's demand obligation is more than pro forma; Mr. Obstfeld has a duty to show the Court that "he has exhausted all the means within his reach to obtain within the corporation itself, the redress of his grievances, or action in conformity to his wishes." *Smachlo v. Birkelo*, 576 F. Supp. 1439, 1443-44 (D. Del. 1983). Mr. Obstfeld has not done so.

### III.    THE COURT LACKS PERSONAL JURISDICTION OVER GLEN LIEBER.

Exercising jurisdiction over Glen Lieber based on his single visit to New York would violate the state's long-arm statute as well as the Due Process Clause of the Constitution. Plaintiffs claim that because CPLR 302(a)(1) is "a single act statute," one isolated contact suffices to support personal jurisdiction. Pls.' Mem. at 15 (citing *Kruetter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)). As Plaintiffs admit, however, CPLR 302(a)(1) requires that the defendant's activities in connection with New York be "purposeful," and that there be a "substantial relationship between the transaction and the claim asserted." 71 N.Y.2d at 467. Thus, in *Kruetter*, personal jurisdiction existed over defendants who engaged in a transaction in New York, where the plaintiff sought to recover funds paid in that transaction. *Id*. at 463, 472.

Unlike *Kruetter*, here the required "substantial relationship" is missing. *Id*. at 467. Plaintiffs allege that Mr. Lieber's sole meeting in New York occurred for the purpose of "discuss[ing] Lieber and defendant Ronald Solar [] assuming positions as the permanent managers and officers of Toev," and the telephone calls with Ignition in New York were to discuss "progress Ignition was making in raising capital for Toev . . . ." Salzhauer Decl. ¶¶ 4, 8. By contrast, Plaintiffs' claims against Mr. Lieber center on the formation of ThermopeutiX, a Delaware corporation based in Mr. Lieber's home state of California, and the alleged misappropriation of technology belonging to Toev, another Delaware corporation. *See* Amended

Compl. ¶¶ 55, 74, 78, 82, 86.[4]  Accordingly, no substantial relationship exists between the cause of action and Mr. Lieber's minimal contacts with New York that would justify the Court's exercise of personal jurisdiction over him.

## IV.     CLAIMS TWO AND FIVE DO NOT STATE ACTIONABLE CLAIMS.

In defense of claim two, Plaintiffs repeat their faulty syllogism:  that because of an alleged breach of a fiduciary duty to Toev's shareholders, Defendants somehow owe money to Mr. Obstfeld on a loan that he personally made to Toev.  Pls.' Mem. at 18.  Plaintiffs ignore the obvious disconnect between any of the Defendants and Mr. Obstfeld's claim as a Toev creditor.

Plaintiffs attempt to salvage their claim for conversion of intangible property (a claim that does not exist under New York law) by referring to the "expressions of an idea" in the Columbia patents.  Pls.' Mem. at 19.  Plaintiffs misconstrue the exception stated in *Phansalkar v. Andersen Weinroth & Co. L.P.*, 175 F. Supp. 2d 635, 639 (S.D.N.Y. 2001), that conversion can extend to "intangible property rights that are merged in or identified with, some document." *Phansalkar* involved the alleged conversion of stock in a company, which was memorialized in a written memorandum and in ownership schedules.  *Id*. at 642.  Plaintiffs' reliance on *Astroworks v. Astroexhibit, Inc.*, 257 F.Supp.2d 609, 618 (S.D.N.Y. 2003) is similarly misplaced.  In *Astroworks* the Court recognized a claim for conversion of an existing "copyrighted and trademarked website." *Id*.  By contrast, Plaintiffs base their conversion claim on "the Brain Cooling Method and other proprietary information."  As discussed above, Toev's license to the Columbia patents is not co-extensive with the Brain Cooling Method.  Plaintiffs do not identify a single New York case recognizing the right to bring a conversion claim based on intellectual

---

[4] Plaintiffs' claim that Mr. Lieber tortiously interfered with an agreement between Ignition and Toev does not identify any contact by Mr. Lieber with New York.  Pls.' Mem. at 16.

8

property embodied in a patent.[5] Moreover, Plaintiffs' reference to "other proprietary information" identifies just the type of incorporeal property that is excluded from conversion claims under New York law.

For these reasons, the Court should dismiss claims two and five under Rule 12(b)(6).

## V.    CLAIMS TWO, FOUR, FIVE, AND SEVEN ARE TIME-BARRED.

Plaintiffs attempt to salvage their time-barred claims with an unpleaded allegation of fraudulent concealment giving rise to equitable estoppel. Pls.' Mem. at 20. Under New York law, however, "[e]quitable estoppel will not toll a limitations statute . . . where a plaintiff possesses timely knowledge sufficient to place him or her under a duty to make inquiry and ascertain all the relevant facts *prior to the expiration of the Statute of Limitations*." *Gleason v. Spota*, 194 A.D.2d 764, 765 (2d Dept. 1993) (emphasis added). Here, Dr. Schwartz resigned in June 2004. Am. Compl. ¶ 43. Plaintiffs admit that Mr. Obstfeld "discovered the individual defendants' involvement with ThermopeutiX by virtue of the Surmodics press release" of May 24, 2005. Pls.' Mem. at 21; Am. Compl. ¶ 47. Thus, Plaintiffs admit to possessing the requisite knowledge in May 2005, *i.e.*, "prior to the expiration of the Statute of Limitations." They waited another 14 months to commence this action. Therefore, equitable estoppel does not apply.

Plaintiffs also assert, contrary to black-letter New York law, that claim two – for breach of fiduciary duty relating to the Obstfeld loan – is subject to a six-year limitations period. As noted in Defendants' initial brief, "a cause of action for breach of fiduciary duty is governed by a six-year statute of limitations where the relief sought is equitable in nature, or *by a three-year statute of limitations where the only relief sought is money damages*." *Weisenthal v. Weisenthal*,

---

[5] Such a cause of action would encroach on federal patent policy. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 152-53 (1989) (state trade secret protection cannot conflict with federal patent scheme).

40 A.D.3d 1078, 1079 (2d Dept. 2007) (emphasis added) (citing N.Y.C.P.L.R. § 214(4)). The Amended Complaint speaks for itself – in claim two, Plaintiffs seek only monetary relief. *See* Am. Compl. ¶¶ 62-63; pp. 17-18. Therefore, the three-year limitations period applies. Because claim two is based on alleged breaches of fiduciary duty that occurred before[6] and in connection with the formation of ThermopeutiX on May 27, 2004, it is time-barred.

Plaintiffs assert that claim four, for tortious interference, is viable because "the injury necessarily occurred in or about July 2004 when Ignition's reputation was damaged as the result of Solar's abrupt refusal to allow Toev to consider offers of investment sourced by Ignition." Pls.' Mem. at 23. Why Plaintiffs now argue that the injury occurred not at or near the time of Solar's alleged conduct (per Am. Compl. ¶ 72), but months later (per Salzhauer Decl. ¶ 9), can only be explained as an after-the-fact attempt to avoid the three-year statute of limitations. Claim four must be dismissed as untimely.

## CONCLUSION

Defendants respectfully request that the Court grant their motion and dismiss Plaintiffs' Amended Complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6), and 23.1.

//

---

[6] Plaintiffs plead that Defendants' alleged misappropriation began before the formation of ThermopeutiX: Am. Compl. ¶¶ 42 ("Schwartz, Solar, Lieber, and Renaissance had begun to make arrangements for the formation of ThermopeutiX during the time that they owed undivided loyalty to Toev"); 41 ("Schwartz, Solar, Lieber, and Renaissance misappropriated the Brain Cooling Method and other related medical technologies from Toev and formed ThermopeutiX as a vehicle to profit from their misappropriation").

Dated:  New York, New York         CONSTANTINE CANNON LLP
        October 17, 2007

                                   By:  **s/ Kerin E. Coughlin**
                                        Kerin E. Coughlin
                                        Stacey Anne Mahoney
                                        450 Lexington Avenue, 17th Floor
                                        New York, New York 10017
                                        Phone: (212) 350-2700
                                        Fax: (212) 350-2701
                                        kcoughlin@constantinecannon.com

                                   FREDRIKSON & BYRON

                                        Laurie J. Miller
                                        200 Sixth Street, Suite 4000
                                        Minneapolis, Minnesota 55402
                                        Phone: (612) 492-7000
                                        Fax: (612) 492-7077
                                        lmiller@fredlaw.com

                                        *Attorneys for Defendants Ronald Solar,*
                                        *Glen Lieber, Renaissance Biomedical, Inc.*
                                        *and ThermopeutiX, Inc.*