```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
LAWRENCE OBSTFELD,
individually and derivatively
on behalf of TOEV MEDICAL
CORPORATION, and
IGNITION VENTURES, INC.,

                  Plaintiffs,

        -against-                        07 Civ. 5847 (DAB)
                                         MEMORANDUM & ORDER
ARTHUR SCHWARTZ, RONALD SOLAR,
RENAISSANCE BIOMEDICAL, INC.,
GLEN LIEBER and THERMOPEUTIX, INC.,


                  Defendants.
-------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/30/2008

DEBORAH A. BATTS, United States District Judge.

Plaintiffs Lawrence Obstfeld ("Obstfeld"), individually and derivatively on behalf of Toev Medical Corporation ("Toev") and Ignition Ventures, Inc. ("Ignition") (collectively, "Plaintiffs") filed suit against Defendants Arthur Schwartz ("Schwartz"), Ronald Solar ("Solar"), Renaissance Biomedical ("Renaissance"), Inc., Glen Lieber ("Lieber") and ThermopeutiX, Inc. ("ThermopeutiX) (collectively, "Defendants") alleging breach of fiduciary duty, tortious interference with contract, tortious interference with business relations, conversion, breach of contractor corporations laws and misappropriation of trade secrets in connection with the alleged failure of Toev, a medical start-up company and the subsequent formation of ThermopeutiX, a second medical start-up company. (Am. Compl. ¶¶ 1, 15 & 41.)

Defendants now move to dismiss for lack of subject matter
jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of
Civil Procedure ("Fed. R. Civ. P.") on the grounds that the
Amended Complaint fails to invoke federal question jurisdiction
and because complete diversity of citizenship between the Parties
is lacking.  In the alternative, Defendants move to dismiss on
the following grounds:   that Plaintiffs fail to meet the
prerequisites for pleading a derivative action under Fed. R. Civ.
P. Rule 23.1; that, under Fed. R. Civ. P. 12(b)(2), personal
jurisdiction over Lieber is lacking; that the Amended Complaint's
second, fourth and fifth causes of action are time-barred and
should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  For
the reasons that follow, Defendants' Motion to Dismiss for lack
of subject matter jurisdiction, pursuant to Fed. R. Civ. P.
12(b)(1), is GRANTED.[1]


BACKGROUND

In 2000, Schwartz and Obstfeld formed Toev for the express
purpose of further developing and commercializing the Brain
Cooling Method and related medical advances which were developed

_____

[1]    Because the Court finds that it lacks subject matter
jurisdiction, it does not reach Defendants' alternative bases for
dismissal.

by Schwartz to assist in alleviating many of the detrimental
effects of strokes. (Am. Compl. ¶ 15.) Obstfeld lives in New
York. (Id. ¶ 7.) Schwartz, an anesthesiologist and former
professor at Columbia University, lives in New Jersey. (Id. ¶¶
10 & 14.) Toev is a Delaware corporation. (Id. ¶ 6.)

Schwartz developed the BCM while he was a professor at
Columbia and as a result Columbia University owned several of the
Brain Cooling Method's component patents (the "Columbia
Patents"). (Id. ¶ 18.) On February 4, 2000, Toev and Columbia
University entered into a licensing agreement and a stock
purchase agreement ("Stock Purchase Agreement"), whereby Toev
purchased a license to the Columbia Patents. (Id. ¶ 22.) On
August 18, 2003, Schwartz executed and issued the following
notice in his capacity as president of the Toev:

> Pursuant to Section 228 of the General Corporation Law of
> the State of Delaware[2] Toev Medical Corporation (the

---

[2]    Section 228(a) of the Delaware General Corporation Law
provides:

> Unless otherwise provided in the certificate of
> incorporation, any action required by this chapter to be
> taken at any annual or special meeting of stockholders of a
> corporation, or any action which may be taken at any annual
> or special meeting of such stockholders, may be taken
> without a meeting, without prior notice and without a vote,
> if a consent or consents in writing, setting forth the
> action so taken, shall be signed by the holders of
> outstanding stock having not less than the minimum number of
> votes that would be necessary to authorize or take such
> action at a meeting at which all shares entitled to vote

"Corporation) hereby notifies you that, in a written consent
dated as of August 18, 2003, the holders of a majority of
the total number of outstanding shares of Common Stock
entitled to vote at a meeting of shareholders of the
Corporation elected Arthur Schwartz as the sole director of
the Corporation to constitute the entire Board of Directors
of the Corporation, and to hold office, subject to the terms
and provisions of the Corporation's by-laws until the next
annual meeting of shareholders or until his successor or
successors are elected and qualify.

(Obstfeld Decl. Ex E.)  In December 2003, Toev's corporate

charter lapsed on account of Toev's failure to pay franchise

taxes.  (Id. ¶ 34.)

On May 27, 2004, more than three years before Plaintiffs

filed suit, Defendants Schwartz, Solar, Lieber and Renaissance

formed ThermopeutiX for the alleged purpose of benefiting from

misappropriation of technological advances belonging to Toev.

(Id. ¶¶ 11-13, 38-39.)  Solar lives in California, is a medical

device engineer and the chief executive officer of Toev.  Lieber

also lives in California and is a former officer and shareholder

of Toev.  Renaissance is a California corporation that Toev

retained as a consultant.  (Id.)  Defendants are allegedly

thereon were present and voted and shall be delivered to the
corporation by delivery to its registered office in this
State, its principal place of business or an officer or
agent of the corporation having custody of the book in which
proceedings of meetings of stockholders are recorded.
Delivery made to a corporation's registered office shall be
by hand or by certified or registered mail, return receipt
requested.

8 Del. C. § 228(a).

4

officers, directors and/or shareholders of ThermopeutiX at the present time.  (Id. ¶¶ 38 & 39.)  Defendant ThermopeutiX, like Toev, is a Delaware corporation.  (Id. ¶ 9.)

On June 20 2004, Schwartz announced to Columbia University that, effective immediately, he was "relinquishing ownership of all of his shares of stock in Toev, assigning those shares to Toev, and resigning from his position as an officer and director of Toev."  (Id. ¶ 43.)  Plaintiffs allege that "[a]s a result of Schwartz's purported resignation and abandonment of Toev, Toev was left without a board of directors."  (Id. ¶ 44.)  Plaintiffs claim that although he was the sole director of Toev and had owned more than 70% of its stock, "he made no effort to fill the vacancy left by his purported resignation as the sole director of Toev."  (Id. ¶ 45.)  Other than providing notice of the resignation to Columbia University, Schwartz allegedly failed to provide notice to Toev's other shareholders, including Obstfeld. (Id. ¶ 46.)

With respect to the composition of the board of directors, the corporate by-laws of Toev provide, in pertinent part, that:

> Each director shall hold office until the annual meeting of the shareholders next succeeding his election, and until his successor is elected and qualified, or until his prior death, resignation or removal.

5

(Obstfeld Decl. Ex. C at Art. III, Sec. 1(c).)  Furthermore, the

Toev's by-laws provide as follows with respect to the resignation

of directors:

> Any director may resign at any time by giving written notice
> to the Board of Directors, the President or the Secretary of
> the Corporation.  Unless otherwise specified in such written
> notice, such resignation shall take effect upon receipt
> thereof by the Board of Directors or such officer, and the
> acceptance of such resignation shall not be necessary to
> make it effective.

(Id. Ex. C at Art. III, Sec. 9.)  Toev's by-laws contain

identical provisions with respect to the resignations of

corporate officers.  (See id. Ex. C at Art. IV, Secs. 1(c) & 2.)

Plaintiff Obstfeld, a Toev shareholder, alleges that he

loaned Toev $50,000 in 2000 and that he in entitled to additional

compensation pursuant to the licensing agreement between Toev and

Columbia University.  (Id. ¶¶ 20-23.)  According to the Amended

Complaint, "[s]oon after Toev received the $50,000 from Obstfeld

to purchase the license to the Columbia Patents, Schwartz froze

Obstfeld out of Toev and refused to allow Obstfeld access to any

Toev corporate information."  (Id. ¶ 25.)  Plaintiffs also

allege, upon information and belief, that "ThermopeutiX has

submitted an application for a patent for respects of the Brain

Cooling Method and other proprietary medical technologies that

had been misappropriated from Toev by Schwartz, Solar, Lieber,

and Renaissance."  (Id. ¶ 51.)  Obstfeld purports to bring this

action derivatively on behalf of Toev, in addition to on his own
behalf.  (<u>Id.</u> ¶ 52.)

     The Amended Complaint's first cause of action alleges that
Schwartz, Solar, Lieber and Renaissance breached their fiduciary
duties by usurping corporate opportunities, forming ThermopeutiX
and making use of their respective positions in Toev to engage in
self-interested transactions.  (<u>Id.</u> ¶ 55.)  Plaintiffs' second
cause of action relates to Defendants' alleged breach of
fiduciary duty to the extent that it allegedly prevented Toev
from meeting its obligations to repay a loan from Obstfeld which
had been made previously for the purpose of purchasing license to
the Columbia University Patents.  (<u>Id.</u> ¶¶ 20 & 61.)  Plaintiffs'
third cause of action is for tortious interference with contract
and alleges that Schwartz, Solar, Lieber and Renaissance induced
Toev to breach an agreement with Plaintiff Ignition.  (<u>Id.</u> ¶ 66.)
Plaintiffs' fourth cause of action is for tortuous interference
with business relations and is based on allegations that Solar
refused to allow Toev to take into consideration investment
offers allegedly made to Toev through Ignition and that
Defendants all breached their fiduciary duties to Toev when they
formed ThermopeutiX.  (<u>Id.</u> ¶¶ 73-74.)  Plaintiffs' fifth cause
of action for conversion claims that Defendants "wrongfully
exercised dominion and control over the Brain Cooling Method and

other proprietary information belonging to Toev." (Id. ¶ 78.)
Plaintiffs' sixth cause of action is for breach of the Stock
Purchase Agreement and the Toev shareholder agreement in addition
to violations of Delaware corporations law, whereby Defendants
allegedly engaged in "general acts of self-dealing and oppression
of minority shareholders." (Id. ¶ 82.)  Plaintiffs' seventh
cause of action is for misappropriation of trade secrets and is
grounded in Defendants' alleged misappropriation of Toev's
confidential and proprietary information through the formation of
ThermopeutiX. (Id. ¶ 78.)

     The Amended Complaint alleges that the Court has diversity
subject matter jurisdiction over this action pursuant to 28
U.S.C. § 1332(a)(1) because "[t]here is complete diversity of
citizenship between the parties to this action and the amount in
controversy exceeds $75,000, exclusive of interest and costs."
(Id. ¶ 2.)  The Amended Complaint also alleges, however, that
both Plaintiff Toev and Defendant ThermopeutiX are Delaware
corporations and therefore citizens of that state.  (Id. ¶¶ 6 &
9.)  Plaintiffs argue that Toev, although named as a plaintiff in
the Amended Complaint, should be aligned as a defendant by the
Court because to do so would accurately reflect the antagonisms
between the Parties to this action.  (Pls.' Opp. at 4.)

8

The Amended Complaint also alleges that the Court has
federal question subject matter jurisdiction over this action,
pursuant to 28 U.S.C. § 1338(a), because it "involves a dispute
concerning a patent."  (Am. Compl. ¶ 3.)  Plaintiffs argue that
the resolution of their conversion and misappropriation of trade
secrets claims necessarily require the Court to consider whether
a patent application submitted by Defendant ThermopeutiX in 2005,
"upon maturation into a patent would, in whole or in part,
infringe upon the exclusive license to the Columbia Patents held
by Toev."  (Pls.' Opp. at 10.)

The Amended Complaint alleges however, that the Columbia
Patents cover "a limited component of the Brain Cooling Method."
(Am. Compl. ¶ 18.)  The Stock Purchasing Agreement by which Toev
obtained an exclusive license to the Columbia Patents defines the
patent being licensed as "patent application Serial No. 09-
330,428, filed June 8, 1999 entitled 'Intravascular Catheter with
Pressure-Dependent Valve' . . . and any patent issuing therefrom
. . . ."  (Obstfeld Decl. Ex. A at 1.)  The Stock Purchasing
Agreement principally granted Toev an exclusive license under
that patent application to "develop, manufacture, use, sell, have
sold, rent, or lease" and products used for the "super cooling of
the brain" and the "super cooling of one or more kidneys".  (Id.
Ex. A at 1-2.)  The Stock Purchasing Agreement also granted Toev

9

an exclusive license to use for the same purposes, "all
information conveyed by Columbia to [Toev] relating to the
technology claimed under the Patents." (Id. at Ex. A at 1.)  The
agreement was essentially for Toev to "use its best efforts to
develop and market Products for commercial sale and
distribution." (Id. at Ex. A at 6.)  As such, under the
agreement, Columbia University retained primary responsibility
for asserting the patent and protecting it against infringement.
(Id. at Ex. A. at 8-9.)  Toev was permitted to initiate legal
proceedings to protect the patent from infringement only if
Columbia University refused to.  (Id.)

    Although the Amended Complaint references patents a number
of times, Plaintiffs Obstfeld and Ignition do not assert any
patent infringement claims on their behalf.  Neither does the
Amended Complaint allege that any patents owned by or licensed to
Toev have been infringed.  At most, Plaintiffs allege that
Defendants converted or misappropriated trade secrets belonging
to Toev that might have been used by ThermopeutiX in a patent
application it submitted in 2005.  (Id. ¶¶ 51, 77-80 & 85-88.)

DISCUSSION

A.  Legal Standard Under Fed. R. Civ. P. 12(b)(1)

    Rule 12(b)(1) of the Federal Rules of Civil Procedure

10

provides for dismissal of a claim when the federal court "lacks jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1) even "a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis for jurisdiction is not sufficient." Frisone v. Pepsico Inc., 369 F. Supp. 2d 464, 469 (S.D.N.Y. 2005) (citations omitted).

When resolving issues surrounding subject matter jurisdiction, a district court is not confined to the complaint and may refer to evidence outside the pleadings, such as affidavits. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)); see also Frisone, 369 F. Supp. 2d at 469-70 ("no presumptive truthfulness attaches to the complaint's jurisdictional allegations"). The court must nevertheless construe all ambiguities and draw all inferences in a plaintiff's favor. Id. Ultimately, however, the plaintiff "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005) (citing Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002)).

11

B.    Diversity Jurisdiction Pursuant to 28 U.S.C. § 1332(a) is
      Lacking

      Section 1332 of Title 28, United States Code confers

district courts subject matter jurisdiction over actions between

"citizens of different States." 28 U.S.C. § 1332(a)(1).  The

party seeking to invoke diversity jurisdiction must allege facts

demonstrating that complete diversity of citizenship exists

between all parties to the action.  Advani Enterprises, Inc. v.

Underwriters at Lloyds, 140 F.3d 157 (2d Cir. 1998).  "[W]hether

federal diversity jurisdiction exists is determined by examining

the citizenship of the parties at the time the action is

commenced."  Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir.

1998) (citing 13B C. Wright, A. Miller & E. Cooper, Federal

Practice and Procedure § 3608, at 448-49 (2d ed. 1984)); 15 J.

Moore, Moore's Federal Practice § 102.32, at 102-61-62 (3d ed.

1998); Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567,

570-71, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004).  Section

1332(c)(1) of the United States Code provides that "a

corporation shall be deemed to be a citizen of any State by which

it has been incorporated and of the State where it has its

principal place of business."  28 U.S.C. § 1332(c)(1).

      Subject matter jurisdiction based on complete diversity of

citizenship between the Parties is lacking on the face of the

12

Amended Complaint because both Plaintiff Toev and Defendant
ThermopeutiX are alleged to be Delaware corporations.  (Am.
Compl. ¶¶ 6 & 9.)  Plaintiffs nevertheless insist that there is
diversity jurisdiction in this matter because Toev should be
aligned as a defendant rather than as a plaintiff to reflect the
"actual antagonisms between plaintiffs, Toev, and Schwartz, who
purported to divest himself of his majority interest in Toev and
resign from his position as sole member of the board of directors
in furtherance of his breaches of fiduciary duty." (Pls.' Opp.
at 4.)

        "[T]he general rule is that the corporation in a derivative
suit should be aligned as a plaintiff since it is the real party
in interest." ZB Holdings, Inc. v. White, 144 F.R.D. 42, 45
(S.D.N.Y. 1992) (citing Duffey v. D.C. Wheeler, 820 F.2d 1161,
1163 (11th Cir. 1987)).  An exception to this rule exists when
aligning the corporation as a plaintiff would not create a "real
collision of interests." Smith v. Sperling, 354 U.S. 91, 97, 77
S.Ct. 1112 (1957).  The Supreme Court stressed that the proper
alignment of the parties is "a practical not a mechanical
determination and is resolved by the pleadings and the nature of
the dispute." Id.  Re-aligning a corporation as a defendant,
however, is only proper when "[the] corporation is actively
antagonistic to plaintiff's interests." ZB Holdings, 144 F.R.D.

at 45 (<u>citing</u> <u>Duffy v. Wheeler</u> 820 F.2d 1161, 1163 (11th Cir.
1997)); <u>see</u> <u>also</u>, <u>Lewis v. Odell</u>, 503 F.2d 445, 446 (2d Cir.
1974) (holding that a corporation should be aligned as a
plaintiff in shareholder derivative action brought against a
former board member because the defendant director no longer held
a position within the corporation).  Thus, "antagonism has
generally not been found where the corporation does not, would
not, or cannot express opposition to the initiation of the
lawsuit."  <u>Netwolves Corp. v. Sullivan</u>, 2001 WL 492463, at *6
(S.D.N.Y. May 9, 2001).

Defendant Schwartz, according to the Amended Complaint,
resigned as the sole member of Toev's board of directors in 2004.
(Am. Compl. ¶ 43.)  Plaintiffs, however, contend that Schwartz
only "purportedly" resigned and that his resignation was
ineffective since, "under Toev's by-laws, a director could only
resign by giving notice to the board of directors or the
president or secretary of Toev."  (Pls.' Opp. at 7.)  Toev's by-
laws clearly permitted Schwartz to resign from the corporation's
board of directors at will and effective immediately.  (Obstfeld
Decl. Ex. C at Art. III, Secs. 1(c) & 9.)[3]  It is apparent that

---

[3]    Plaintiffs cite <u>Inventions Corp. v. Hobbs</u>, 244 F. 430, 443
(1917) and <u>Zeltner v. Zeltner Brewing Co.</u>, 174 N.Y. 247, 253
(1903) in support of the proposition that, under Delaware law, a
resignation is deemed invalid when it is for the purpose of
perpetuating a wrong and is in the actor's own interest.  (Pls.'

Schwartz did in fact resign from Toev's board of directors, and therefore, it cannot be said that Schwartz is any way causing Toev to be presently antagonistic to the interests of the other Plaintiffs.

Plaintiffs also claim that the alleged "fraud and misdeeds" of corporate officials automatically imply that there is antagonism sufficient to warrant aligning a corporation as a defendant. (Pls.' Opp. at 5 (citing Smith, 354 U.S. at 95).) The alleged transgressions to which Plaintiffs refer include alleged breach by Defendants of fiduciary duty to shareholders and misappropriation of proprietary information from Toev upon the formation of ThermopeutiX. (Id.) These claims of prior misconduct, however, are insufficient to warrant realignment because antagonism between parties is determined based on the relationship between the parties at the time the action is commenced. See Duffy, 820 F.2d at 1163 (requiring present antagonism for realignment of a corporation).

The Court thus finds that re-alignment of Toev as a Defendant is thus unwarranted. As such, the Court finds that complete diversity of citizenship necessary to support subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(1)

---

Opp. at 6-7.) The ancient authorities relied upon by Plaintiffs are entirely inapposite to the instant case.

is lacking.


C.    Patent Jurisdiction Pursuant to 28 U.S.C. § 1338(a)
      is Lacking

      Under section 1338(a) of Title 28, United States Code,

district courts have original jurisdiction over claims "arising

under any Act of Congress relating to patents." 28 U.S.C. §

1338(a). Patent jurisdiction under 28 U.S.C. § 1338(a) extends

"only to those cases in which a well-pleaded complaint

establishes either that federal patent law creates the cause of

action or that the plaintiff's right to relief necessarily

depends on resolution of a substantial question of federal patent

law in that patent law is a necessary element of one of the well-

pleaded claims." Christianson v. Colt, 486 U.S. 800, 809, 108

S.Ct. 2166 (1988). Thus, "a claim supported by alternative

theories in the complaint may not form the basis for § 1338(a)

jurisdiction unless patent law is essential to each of those

theories." Id. at 810.

      The mere mention of patents in the pleadings does not

necessarily mean that the case involves a substantial question of

patent law. See, e.g., Nokia Corp. v. Interdigital, Inc., No.

2008-1265, 2008 WL 1777471, at *1 (Fed. Cir. 2008) (finding no

substantial question of federal patent law in "a contract dispute

involving interpretation of terms in the agreement . . .)(citing

Ballard Med. Prods. V. Wright, 823 F.2d 527, 530-531 (Fed. Cir.

1987)); Pina v. Sony Discos, Inc., No. 97 Civ. 6445, 1999 WL

349952, at *2 (S.D.N.Y. May 28, 1999) (noting that the "[m]ere

allegation of infringement is not dispositive of the

jurisdictional question) (citing Living Music Records, Inc., 827

F. Supp. 974, 979 (S.D.N.Y. 1993)).

Plaintiffs do not assert that federal patent law creates the

cause of action, but rather that "[Plaintiffs' claims]

necessarily [depend] on a determination of whether the

ThermopeutiX patent application, upon maturation into a patent,

would . . . infringe upon the exclusive license to the Columbia

patents held by Toev." (Pls.' Opp. at 10.)  Plaintiffs allege

that the patent application, which has been assigned to

ThermopeutiX, "appears to incorporate elements of the Brain

Cooling Method." (Id. at 10.)  They thus contend that their

conversion and misappropriation of trade secrets claims

necessarily depend on a determination of whether the ThermopeutiX

application involves an invention that, should the patent mature,

would infringe on the Columbia Patents, and therefore, that

patent jurisdiction is proper.  (Id.)  Defendants contend that

none of the allegations contained in Plaintiff's Amended

Complaint are sufficient to invoke jurisdiction under § 1338(a)

17

because Plaintiffs plead their claims on the basis of state law
and neither identify relevant federal statutes (aside from those
involving jurisdiction) nor assert in their Amended Complaint
that their right to relief requires the resolution of a
substantial question of federal patent law.  (Defs.' Mem. at 11.)

Plaintiffs rely on U.S. Valves, Inc. v. Dray, 212 F.3d 1368,
1372 (Fed. Cir. 2000), in which the defendant gave the plaintiff
the exclusive right to "manufacture, use, sell, advertise and
distribute the Licensed Product."  The Federal Circuit found that
the action had raised a substantial question of patent law
because "[t]o show that [defendant] Dray sold valves in
contravention of [plaintiff] U.S. Valves' exclusive rights to
such sales, U.S. Valves must show that Dray sold valves that were
covered by the licensed patents."  Id.  The Federal Circuit has
recently cautioned however, that "[U.S. Valves] does not stand
for the proposition that all breach of contract actions involving
patents require [] a determination [that the defendant's actions
infringed the patent . . . [and in addition] the [mere] presence
of the patent does not require resolution of a substantial
question of U.S. patent law."  Bd. of Regents, Univ. of Texas
Sys. v. Nippon Tel. & Tel. Corp., 414 F.3d 1358, 1360 (Fed. Cir.
2005).

18

Plaintiffs' conversion and misappropriation of trade
secrets claims rest on a far more nebulous factual basis that the
claim involved in <u>U.S. Valves</u>, which raised a straightforward
question of whether a certain product infringed upon patents that
were exclusively licensed to the plaintiff.      Plaintiffs have
not actually alleged infringement but rather that Defendants
"form[ed] ThermopeutiX for the purpose of their misappropriation
of the Brain Cooling Method and other related medical technology
that were the trade secrets and proprietary information of Toev .
. ." (Am. Compl. ¶ 55.)  Moreover, Plaintiffs themselves allege
that the Columbia Patents only pertain to "a limited component of
the Brain Cooling Method." (<u>Id.</u> ¶ 18.)

While it is unclear whether ThermopeutiX' 2005 patent
application is relevant to the conversion and misappropriation of
trade secrets claims, it certainly does not appear to be
necessary to consider that patent application or the Columbia
Patents in determining those claims.  In order to prove their
conversion and misappropriation claims against Defendants,
Plaintiffs merely need to prove that Defendants took proprietary
information from Toev without authorization.  The Court finds
that Plaintiffs' claims of conversion and misappropriation of
trade secrets are attenuated from the issue of patent
infringement or potential patent infringement.  Plaintiffs have

19

not carried their burden to show that those claims necessarily
raise a substantial issue of federal patent law.  The Court
therefore finds subject matter jurisdiction over this matter
under 28 U.S.C. § 1338(a) is lacking.  See, e.g., Bd. of Regents,
414 F.3d at 1365 (likening the claims raised by the plaintiff
with the "contract and misappropriation claims that implicated
U.S. patents" raised by the plaintiffs in Uroplasty and AT & T,
which were found by the court to be insufficient to establish
subject matter jurisdiction under § 1338(a)); Uroplasty, Inc. v.
Advanced Uroscience, Inc., 239 F.3d 1277, 1280 (Fed. Cir. 2001)
(holding that resolution of claims involving misappropriation of
trade secrets, breach of fiduciary duty and breach of contract
under Minnesota law were insufficient to establish subject matter
jurisdiction under § 1338(a)); AT & T Co. v. Integrated Network
Corp., 972 F.2d 1321, 1324 (Fed. Cir. 1992) (holding that the
terms of the pertinent Agreements for Assignment of Inventors
extended beyond the relevant inventions and thus because AT&T
could rely on theories which did not require the resolution of
federal patent law issues, jurisdiction was not proper under §
1338(a)).

     Accordingly, pursuant to Fed. R. Civ. P. 12(b)(1),
Defendants' Motion to Dismiss for lack of subject matter
jurisdiction is GRANTED.

CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs have failed to demonstrate that the Court has subject matter jurisdiction over this action under either 28 U.S.C. §§ 1332(a)(1) or 1338(a). Defendant's Motion to Dismiss the Amended Complaint for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), is therefore GRANTED. The Clerk of Court is directed to close the docket in this case.

SO ORDERED.

Dated:    New York, New York
          June 30, 2008

                                        _Deborah A. Batts_
                                        DEBORAH A. BATTS
                                   United States District Judge